Marian **FONTENOT**, etc.,
Plaintiff-Appellant,

v.

The **UPJOHN COMPANY,**
Defendant-Appellee.

No. 85–4201.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1986.

---

Duro J. Duplechin, Jr., New Orleans, La., for plaintiff-appellant.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Graham N. Smith, Timothy J. McNamara, Lafayette, La., for defendant-appellee.

Before RUBIN, RANDALL, and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The question presented is whether the district court may render summary judgment against a party who will bear the burden of proof of an essential element of its case at trial but is unable, in response to a motion for summary judgment, to produce any evidence, direct or circumstantial, on that issue; or to identify any witness who will testify in her favor on the issue; or to produce any evidence that might create an inference in her favor. We hold that, in the absence of even a scintilla of evidentiary material in her favor, such a party should not be entitled to put her opponent to trial on the merits by making the bare allegations of notice pleading. Therefore, in the absence of any evidence whatever, after seven months of time for discovery, that the plaintiff's treatment during two pregnancies with a drug perhaps manufactured by the defendant was capable of causing the complained-of heart defects in the plaintiff's two children, summary judgment in favor of the manufacturer is affirmed.

I.

Marian Fontenot, the mother of Melanie Ann Fontenot, then 15, and Brian Glenn Fontenot, then 13, sued the Upjohn Company on December 20, 1983. She alleged that her physician had treated her with progesterone before the birth of each child, that the progesterone he used was made by Upjohn, and that, as a result of her use of the drug, Melanie was born with a ventricle septal defect that required surgery when she was three months old and Brian was born with both a ventricle septal defect and heart valve problems that required three surgical interventions.

Although neither party offered any evidence concerning the nature of progesterone, we learn from a standard text and from the Physician's Desk Reference, that progesterone is a natural hormone whose function is to prepare the uterus for the reception and development of fertilized ovum.[1] Synthetic progestational agents, which are made by a number of pharmaceutical companies, have been used in an attempt to prevent habitual abortion or to treat threatened abortion. Because studies have suggested an association "between intrauterine exposure to female sex hormones and congenital anomalies," the use of progestational agents during the first four months of pregnancy is not recommended.[2] In July, 1984, Mrs. Fontenot dismissed her counsel and retained new counsel, who was enrolled on July 5. On July 31, Upjohn served interrogatories on Mrs. Fontenot's new counsel. After her answers were filed in October, 1984, Upjohn filed a motion for summary judgment contending (1) that it had not manufactured the products identified by Mrs. Fontenot in her interrogatories as the drug she had received, Progesterone 1 or Progest; and (2) that Mrs. Fontenot was unable to demonstrate in any way that the injuries allegedly suffered by her children were caused by a product made by Upjohn. In its memorandum in support of the motion, Upjohn pointed out that, in various interrogatories, Mrs. Fontenot had been asked:

To list every witness, other than experts, whom she might call to support any of the allegations of her complaint;

---

1. Dorland's Illustrated Medical Dictionary 1073 (26th ed. 1985).

2. Physician's Desk Reference 638 (1985).

To name any witness who had indicated to her that any defects suffered by either Melanie Ann or Brian Glenn were in any way related to the use of the drug identified in her complaint;

To identify any expert witness who could testify that any ailments suffered by either Melanie Ann or Brian Glenn were related to the drug described in her complaint;

To list all experts whom she had consulted.

To all of these interrogatories except the last, Mrs. Fontenot had replied, "Unknown at the present time." In her answer to the last question, she added: "However, these experts will be developed by the plaintiffs prior to trial and information regarding these experts will be supplied to defendant as developed." At the time she filed her answers to these interrogatories, the suit had been pending for ten months.

In further support of its motion, Upjohn filed the affidavit of Reed Peterson, its vice-president for marketing, who attested that Upjohn had never manufactured a drug with the trade name of the drug that Mrs. Fontenot claimed that she had ingested. But Upjohn did not supply any affidavits or evidentiary material to negate the possibility that heart defects of the kind alleged might be caused by administration of progesterone to a mother during her pregnancy.

In her opposition to the motion, filed in February, 1985, Mrs. Fontenot attached the affidavit of her treating doctor who affirmed that the drug he had administered during her pregnancies was "probably made by Upjohn." But Mrs. Fontenot offered no evidentiary basis to support the claim that this drug had caused, or was even capable of causing, the birth defects in her two children, saying: "The question

of causation, by its very nature, addresses itself to the merits of the case, and is not a proper reason for the granting of a motion for summary judgment." Mrs. Fontenot's counsel then sought more time for discovery, and filed two motions for a continuance: (1) a motion for a continuance of the April, 1985 trial date, in which defense counsel joined, and (2) a motion for a continuance of the hearing on the motion for summary judgment, which was opposed by counsel for Upjohn.

The district court granted the motion to continue the trial date, but denied the motion for a continuance of the hearing on the motion. On February 12, the court granted summary judgment without, however, giving any reasons for its action. Mrs. Fontenot asserts on appeal that her motion for a continuance should not have been denied and that the summary judgment should be reversed.

## II.

■ A motion for a continuance is addressed to the discretion of the trial court[3] and its denial of such a motion will be reversed on appeal only when the action is, to use the conventional term, "an abuse of discretion."[4] As Judge Henry Friendly has pointed out, that verbal standard is used to describe a wide variety of different measures of latitude.[5] When the question for the trial court is a scheduling decision, such as whether a continuance should be granted, the judgment range is exceedingly wide, for, in handling its calendar and determining when matters should be considered, the district court must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's.

■ In moving the court for a continuance, Ms. Fontenot's counsel did not indi-

**3.** *Securities Exchange Comm'n v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir. 1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981).

**4.** *Paul Kadair, Inc. v. Sony Corp. of Am.,* 694 F.2d 1017, 1029 (5th Cir.1983); *Pan-Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 550

(5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *Walters v. City of Ocean Springs,* 626 F.2d 1317, 1321 (5th Cir. 1980).

**5.** *See* Friendly, Indiscretion About Discretion, 31 Emory L.J. 747 (1982).

cate any specific discovery that he proposed to undertake. While he had propounded four interrogatories to Upjohn that had not been answered, all of these inquired into the sale of progesterone to pharmacies in Morgan City, Louisiana, and none was even remotely addressed to causation. Federal Rule of Civil Procedure 56(f) provides that a party who needs additional time to oppose a motion for summary judgment must file an affidavit "that he cannot for reasons stated present by affidavit facts essential to justify his opposition." While a party's failure to comply with Rule 56(f) procedure does not preclude consideration of the motion,[6] some equivalent statement, preferably in writing or at least at the hearing of the motion, is expected. Ms. Fontenot's counsel neither filed such an affidavit nor stated any facts that would have required a continuance. Instead he said only that (1) the plaintiff had not yet had sufficient time or resources to complete discovery, and (2) the facts creating genuine issues for trial are peculiarly within the knowledge of the defendant. Counsel has suggested no information concerning causation that he would like to obtain from Upjohn, and discovery from Upjohn is not a device by which he could learn of witnesses who might support his claim that progesterone was a possible, let alone likely, cause of the heart defects in the plaintiff's children.

■ Moreover, counsel has not suggested how he was prejudiced by the denial of a continuance. Federal Rule of Civil Procedure 61 forbids reversal absent prejudice to the "substantial rights" of a party.

We, therefore, refuse to substitute our judgment concerning the necessity of a continuance for that of the district court, both because the call was for the trial judge to make and because no resultant prejudice has been shown.

---

**6.** *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1146 (5th Cir.) (*en banc*), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973).

**7.** Fed.R.Civ.P. 56(c).

**8.** *Thornhill v. Black, Sivalls & Bryan, Inc.*, 394 So.2d 1189, 1191 (La.1981); *Weber v. Fidelity &*

## III.

The principal function of the motion for summary judgment is to show that, in the absence of factual disputes, one or more of the essential elements of a claim or defense before the court is not in doubt and that, as a result, judgment should be entered on the basis of purely legal considerations. Summary judgment must, therefore, be rendered when the material offered in support of and in opposition to the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7] Because subject matter jurisdiction in this case is founded on diversity, the case is, of course, controlled by Louisiana law. In products liability cases in Louisiana, the plaintiff bears the burden of proving a causal connection between use of the product and the injury for which she seeks redress.[8]

In the usual case, the party who seeks a summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion. He must establish thereby the existence or nonexistence of enough of the essential elements of a claim and its related defenses to permit disposition of the claim as a matter of law. Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor.

If the movant, however, does not bear the burden of proof, he should be able to obtain summary judgment simply by disproving the existence of any essential element of the opposing party's claim or affirmative defense. "Of course," as Profes-

---

*Cas. Ins. Co.*, 259 La. 599, 250 So.2d 754 (1971); *Lanclos v. Rockwell Int'l Corp.*, 470 So.2d 924, 929 (La.App.1985); *Gatlin v. Coca-Cola Co.*, 461 So.2d 452, 453 (La.App.1984). *See also* Restatement (Second) of Torts § 402A(1) (1965).

sor Martin B. Louis points out in his article, *Federal Summary Judgment Doctrine: A Critical Analysis,*[9] "when the movant is a plaintiff he must ordinarily do more than defeat the opposing party's affirmative defenses in order to obtain a final [rather than partial] judgment." Since, in addition to asserting an affirmative defense, the defendant will likely have denied the plaintiff's allegations, the plaintiff must also establish all of the essential elements of his claim.

The crucial question for the court is whether there is a "genuine issue" of fact concerning any essential element of the claim on which judgment is being sought. If the moving party can show that there is no evidence whatever to establish one or more essential elements of a claim on which the opposing party has the burden of proof, trial would be a bootless exercise, fated for an inevitable result but at continued expense for the parties, the preemption of a trial date that might have been used for other litigants waiting impatiently in the judicial queue, and a burden on the court and the taxpayers. Aside from counsel's fees, which this court has frequently fixed at rates of $100 per hour or more, a Rand Corporation study has estimated the public cost of the average jury trial in federal court to be over $7000.[10] Hence, every hour of litigation is costly both to the parties and the taxpayers, and the expense should not be incurred needlessly.

Few of the cases or commentators have squarely faced the problem raised by this case. When a defendant moves for summary judgment on the ground that the plaintiff has failed to establish a prima facie case, must he adduce positive evidence to disprove the existence of an essential element of the plaintiff's case, or may he simply show that the plaintiff has failed to bring out any evidence whatever in support of that element of his claim? The treatises written by Professor Moore and by Wright and Miller at least imply[11] that, because of its structure and phrasing, Rule 56 requires the movant to establish in some fashion the absence of any issue of material fact, even though the other party would be required not only to adduce evidence on, but to prove the existence of, the critical facts at the trial.

Rule 56 does not, however, preclude the coordination of summary judgment proof requirements with the allocation of the burden of proof at trial. If a party who does not have the burden of proof at trial has access to evidentiary materials that disprove the facts necessary to establish the opposing party's position, he should adduce them in one of the fashions mentioned by Rule 56: affidavit, deposition, or testimony, when permitted by Rule 43(e).[12] If, however, it is evident that the party seeking summary judgment against one who bears the proof burden has no access to evidence of disproof, and ample time has been allowed for discovery, he should be permitted, as Upjohn did here, to rely upon the complete absence of proof of an essential element of the other party's case.

The district court should view such a motion critically to determine whether either inference or circumstantial evidence might suffice to create the existence of a factual dispute about the claims. The party opposing a motion supported by affidavits cannot discharge his burden by alleging legal conclusions.[13] There is no sound reason why conclusory allegations

---

**9.** 83 Yale L.J. 745, 747–48 (1974).

**10.** J. Kakalik & R. Ross, Costs of the Civil Justice System: Court Expenditures for Various Types of Civil Cases xviii, Table S.8 (RAND Institute for Civil Justice 1983).

**11.** *See, e.g.,* 6 J. Moore, Moore's Federal Practice ¶ 56.15[3], at 56–480–81 (1985); 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727.

**12.** 10A Wright, Miller, & Kane, *supra* note 11, at § 2723.

**13.** *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569, 591–93 (1968); *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985); *Curl v. International Business Machs. Corp.,* 517 F.2d 212, 213 (5th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976).

should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence. Absent evidence, direct, circumstantial, or inferential, that would create a genuine issue of fact, and absent any suggestion concerning the utility of additional time for further discovery, the motion should be granted. In this fashion, as in the others suggested by Professors Wright, Miller, and Kane, "the movant may discharge his burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his opponent." [14]

The abandonment of fact pleading displaced the demurrer, the motion to dismiss, and various equivalents as a means to test the sufficiency of factual allegations. The function of intercepting factually insufficient claims is now assigned to the summary judgment. [15] As the notes of the Advisory Committee on Civil Rules state, "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." [16] If a party who seeks summary judgment must discharge the rigorous burden of proving the complete absence of any evidence to support a claim, he would rarely be able to compel the party who asserts a claim to show that there is at least some evidence to support it.

To permit the pleadings themselves to carry a case to trial when they rest only on the invention of counsel would permit ultimate circumvention of Federal Rule of Civil Procedure 11. As amended in 1983, Rule 11 makes the signature of an attorney or party to a pleading a certificate "that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact...." The Advisory Committee states, "The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." [17] If such an inquiry has properly been made, some evidentiary material should be available to support each essential element of the claim.

An inherently normative issue, such as whether a product is impermissibly dangerous or was defectively designed, is not, of course, susceptible to summary judgment. For this reason, we held in *Davidson v. Stanadyne* [18] that summary judgment on such a question was improper. The evidence required balancing by the jury of the utility of the product against the likelihood of, and gravity of, injury from its use. In the present case, there is no evidence of causation to put into the balance.

Expressions may be found in the Supreme Court's decision in *Adickes v. S.H. Kress and Company*, [19] that it may be improper to grant summary judgment merely because there is no evidence to prove an essential element of a claim. In that case, however, the plaintiff submitted an affidavit disputing an assertion on which the motion for summary judgment relied, and the court found "unexplained gaps" [20] in the materials submitted by the movant. The Court observed that the 1963 amendment to Rule 56(c) "was not intended to modify the burden of the moving party under Rule 56(c) to show initially the absence of a genuine issue concerning any material fact." [21] The Court moreover noted, "[e]ven though not essential here to defeat [defendant's] motion, the submission of ... an affidavit [of a witness with knowledge of the facts or one explaining why it was impractical for the plaintiff to do so] would have been the preferable

---

14. 10A Wright, Miller, & Kane, *supra* note 11, § 2727, at 130. *See also* Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487–88 (1984).

15. Louis, *supra* note 9, at 752.

16. Fed.R.Civ.P. 56 advisory committee note on the 1963 amendments to rule 56(e).

17. Fed.R.Civ.P. 11 advisory committee note on the 1983 amendments to rule 11.

18. 718 F.2d 1334 (5th Cir.1983).

19. 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

20. *Id.* at 158, 90 S.Ct. at 1609, 26 L.Ed.2d at 155.

21. *Id.* at 159, 90 S.Ct. at 1609, 26 L.Ed.2d at 155.

course for [plaintiff's] counsel to have followed." [22]

Those statements in *Adickes* were made before the 1983 amendments to Rule 11. They do not preclude the entry of summary judgment when the effect of that rule is added to the balance, along with burden of proof, and when, after ample time for discovery, the closet of evidence is bare.

■ The District of Columbia Circuit has reached a contrary conclusion in *Catrett v. Johns-Manville Sales Corp.,*[23] a wrongful death action in which the plaintiff alleged that exposure to the defendants' products caused her husband's death. The trial court had granted the defendant's motion for summary judgment on the issue of causation because the plaintiff had failed to present any evidence on that element of her claim. The circuit court reversed because the defendant had not supported its motion as provided in Rule 56(e) with affidavits or evidence of any kind whatever, but had based its motion solely on the plaintiff's purported failure to produce evidence to support her claim. The court concluded that, until the movant complied with the requirement of Rule 56(e),[24] the opposing party was under no duty to counter the motion with evidence of its own. Judge Robert Bork dissented, arguing that the majority's holding, in effect, would mean that in a case such as this the plaintiff need never proffer any evidence until she faces a motion for a directed verdict at trial. He also disputed the majority's reasoning, stating that Rule 56 "imposes no obligation on parties seeking summary judgment always

to introduce positive evidence proving the absence of a factual dispute." [25] We endorse this view.

Summary judgment is not a "peculiar procedural shortcut," but an integral part of the "framework of the Rules, closely related to other provisions which are similarly intended to permit the early elimination of claims and defenses that the proponent cannot support." [26] Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions,[27] and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive. Courts, including our own, have been, as Judge William W. Schwarzer has said, ambivalent toward summary judgment, sometimes because of the "suspicion that [trial] judges, intent on controlling their dockets, may use summary judgment as a 'catch penny contrivance to take unwary litigants into its toils and deprive them of a trial.'" [28] "Public demand for greater efficiency and economy, which is served by early disposition of baseless claims and defenses, is insistent and well-founded and has led to widespread efforts to find alternative means of dispute resolution. Proper use of Rule 56 is one way in which the judicial system can respond to that demand consistent with justice." [29] When everything that can be adduced at trial is before the judge on motion and the parties, while urging conflicting ultimate facts or conclusions, have no evidentiary disputes, a trial serves no useful purpose.

---

**22.** *Id.* at 161–62, 90 S.Ct. at 1610, 26 L.Ed.2d at 156–57.

**23.** 756 F.2d 181 (D.C.Cir.1985), *cert. granted sub nom. Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 342, 88 L.Ed.2d 285 (U.S.1985).

**24.** Fed.R.Civ.P. 56(e) ("[W]hen a motion for summary judgment is made *and supported* as provided in this rule....").

**25.** *Catrett,* 756 F.2d at 190 (Bork, J., dissenting). *See* Fed.R.Civ.P. 56(b):

A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory

judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any party thereof.

**26.** Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 465 (1984).

**27.** Fed.R.Civ.P. 1.

**28.** Schwarzer, *supra* note 25, at 466, *quoting Whitaker v. Coleman,* 115 F.2d 305, 307 (5th Cir.1940).

**29.** Schwarzer, *supra* note 25, at 467.

We recognize that, to some degree, this opinion reinterprets Rule 56. But finding no cases in this circuit reaching a contrary result and in view of the considerations set out above, the judgment is AFFIRMED.