Decided October 15, 1986

FILED

88 OCT 15 P 4: 24

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

| | | |
|---|---|---|
| MARIAN ALDAN-PIERCE, | ) | CIVIL ACTION NO. 86-86 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| LEOCADIO C. MAFNAS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PROCEDURAL HISTORY

The plaintiff's motion for summary judgment came on for hearing on October 8, 1986 at 10:00 a.m. At the outset, the plaintiff objected to the memorandum of points and authorities and affidavit filed by the defendant. Essentially, the objection is based upon the late filings of the documents. The affidavit of the defendant was filed at 4:23 p.m., October 7th and the 21-page opposition memorandum was filed at 7:50 a.m., October 8th. There is no doubt that these filings were not timely and should be stricken. Com.R.Prac., Rule 8(a)(2). The reason for the rule is to avoid surprises, to allow opposing counsel and the court at least 24 hours to review the substance

857

and merits of the opposition, and to promote the fair and efficient determination of motions.

Were this the first hearing dates for plaintiff's motion, the court may be more receptive to the defendant's excuses for failure to timely file his opposition. However, this matter was originally set for hearing on September 10, 1986, continued at defendant's request to September 19, 1986 and further continued to October 8, 1986 by stipulation. At the hearing on September 10, 1986 the court specifically reminded defendant's counsel to make sure any opposition memorandum is timely filed.

The defendant has pled in his answer/counterclaim that significant constitutional issues need to be resolved in this motion and pursuant to Rule 56(c), Com.R.Civ.Pro., it appears that, at least, counsel could argue the matter from the pleadings. It seems that if such is the case, a full and adequate hearing on the issues would not occur if the court strikes the untimely memorandum.

On the other hand, the risk of setting a precedent and allowing late opposition filings in contravention of Rule 8, Rules of Practice, is real.

It is with no small amount of reluctance that the court allowed the plaintiff an option to continue the hearing so the opposition papers of the defendant could be reviewed. That option was rejected as the plaintiff wished the matter to proceed without any further delay. Oral arguments proceeded

with the court considering the affidavit and memorandum in opposition.[1]

## THE OPTION

There is no dispute over the facts about the option agreement.

Messrs. R. Fennell and B. McMahon are attorneys who were instrumental in obtaining an option on a parcel of land designated as Lot No. 008 B 25 in San Roque Village, Saipan. The option document is attached to the movant's paper as Exhibit 6.[2] The option shows the optionee to be Antonia Villagomez.

Fennell and McMahon provided the funds for the option and it was agreed that should they provide the money to exercise the option, Villagomez would accept the money from Fennell and McMahon, pay it to the defendant, take fee simple title, and then lease the property to Fennell and McMahon for the longest period allowed by law.

---

[1] The plaintiff also objected to the form of the affidavit of the defendant since it does not comply with Rule 56(e). The objection appears valid. As will be seen, this is of no great import as the affidavit is not determinative of the legal issues nor does it raise genuine issues of fact.

[2] The file will reflect prior options for the property which were negotiated or held by other parties and with slightly different terms. To resolve the constitutional issues raised by defendant, the court need only to consider the option agreement dated September 15, 1984.

On July 6, 1985, Villagomez, upon instructions from Fennell and McMahon, timely exercised the option to purchase the property for the agreed upon $10 per square meter but the defendant refused to convey title or to comply with the terms of the option. On January 13, 1986 Ms. Villagomez assigned her rights in the option to the plaintiff. This suit was filed shortly thereafter to require the defendant to perform his part of the option agreement.

Although the defendant in his answer (paragraph 3) denies he is the owner of the property, this matter was not pressed at argument nor is it raised in defendant's opposition memorandum. The plaintiff is willing to accept a deed from the defendant and any purported defense on this ground has no merit.[3] The defendant also alleges in his answer (paragraph 4) that he didn't understand the legal significance of the option agreement. This defense was not argued or supported by points and authorities at the hearing. Nor does defendant's affidavit rebut the affidavits supporting the fact that defendant knew and understood the terms of the option agreement. Indeed,

---

3/
The option agreement was recorded October 4, 1984. The defendant received title to his lot by virtue of a deed dated August 1, 1985. The deed was to evidence the split of the land the defendant held with his sisters. The siblings exchanged deeds for their respective parcels and lot 008 B 25 was defendant's share. The deed to defendant purports to convey title to the defendant and his children. Whether this creates a title problem to the plaintiff in the future is another matter not addressed here. Suffice to say, this does not present a defense to plaintiff's action.

reading defendant's affidavit leads the court to conclude that defendant knew exactly what was encompassed in the option. The only complaint defendant has is that he was unaware of the financial consequences of the option and whether it was based on good business judgment. This is a matter of hindsight and second guessing and does not present a factual issue of fraud, impossibility of performance or some other theory to void the agreement. As indicated above, the defendant presents no legal theory or factual issue to support this defense.

The legal theory the defendant has chosen and upon which he stands is that the option is unconstitutional because it is in violation of Article XII, Section 1, of the Constitution of the Commonwealth.[4]

## THE CONSTITUTIONAL ISSUE

The defendant's theory is based upon the premise that Fennell and McMahon are principals and the plaintiff is their agent. It is argued they so completely control the plaintiff, this is tantamount to Fennell and McMahon (who are not of Northern Marianas descent) holding title in violation of

---

[4] Article XII, Section 1, reads:

"The alienation of permanent and long-term interests in real property within the Commonwealth shall be restricted to persons of Northern Marianas descent."

This court has upheld this provision which has been attacked on U. S. Constitutional grounds. See Wabol vs. Muna, et al, Civil Action No. 84-302 (now on appeal).

Article XII, Section 1, of the Constitution. Cited by the defendant are various portions of the Restatement of Agency.

To properly analyze the relationship between the parties to the option, it is necessary to set forth the steps to be followed in the exercise and culmination of the option agreement. Simply stated, they are:

1. Fennell and McMahon direct plaintiff to exercise the option.

2. The defendant executes a warranty deed and Fennell and McMahon pay the purchase price to plaintiff who in turn pays the defendant.

3. The defendant's deed is recorded showing fee simple title in plaintiff's name.

4. Plaintiff executes a lease in favor of Fennell and McMahon for the maximum period allowed by law.[5]

Analyzing these various steps, it can readily be seen when the agency or fiduciary relationship between the plaintiff and Fennell and McMahon starts and ends. Steps 1, 2 and 3 would obligate the plaintiff to perform her functions as an agent/fiduciary of Fennell and McMahon. The third step of theplaintiff taking fee simple title is in compliance with

---

[5]
Article XII, Section 3, of the Constitution (as amended) provides that persons who are not of Northern Marianas descent may acquire leasehold interests for 55 years.

Article XII, Section 1 and _not_ in contravention of the Constitution.

The last and final step results in significant changes in the relationship between the plaintiff and Fennell and McMahon. Once the lease is entered into between them, any agency or fiduciary relationship terminates. The plaintiff has accomplished and completed all the duties she was required to do.

The relationship is converted to a lessor/lessee one and there is no longer any agency/fiduciary relationship between the plaintiff and the lessees. The "control" of the principal over the agent to which the defendant bases his theory vanishes upon execution of the lease. There is no substance or merit to defendant's argument that the prior agency or fiduciary relationship continues and supercedes the lease agreement.

Defendant supports his "continuing agency" theory after the execution of the lease by citing § 14B and § 385 of the Restatement. Section 14B of the Restatement states the rule that one who has title to property which he/she agrees to hold for the benefit and subject to the control of another is an agent-trustee and is subject to the rules of agency. This rule does not apply to the relationship of the plaintiff and her lessees after the lease is executed and put in force. The plaintiff no longer holds title subject to the control of the lessees but holds fee simple title subject to the written lease terms. The plaintiff ceases to be an agent or fiduciary and

becomes a lessor. The broad duty of the agent to obey the principal (§ 385, Restatement) is no longer in existence.[6]

In order for defendant's argument to prevail, the court would have to totally ignore any lease agreement which is permitted by the. Constitution and to declare the nebulous, unwritten agency control relationship, which in this case is not permitted by the Constitution, to be what will void the transaction. This, of course, would be appointing an agent to do an illegal act. Restatement of Agency 2d, § 19. Once the plaintiff, as the agent accomplishes the authorized acts of taking title and executing the lease allowed by law, the agency relationship terminates. §§ 106 and 107, Restatement of Agency 2d.

When one person pays the purchase price for land and title is placed in another's name, normally a resulting trust arises in favor of the person by whom the purchase price is paid. Restatement of Trusts, 2d, § 440. However, a resulting trust does not arise in such a case if the person paying the purchase price manifests an intention that no resulting trust should arise. Restatement of Trusts, 2d, § 441.

---

[6] Section 385(1) of the Restatement states:
"*Unless otherwise agreed*, the agent is subject to a duty to obey all reasonable directions in regard to the manner of performing a service that he has contracted to perform." (emphasis added) Section 423 of the Restatement cited by the defendant is likewise prefaced with the words "Unless otherwise agreed,". Therefore, the law of agency recognizes and enforces subsequent agreements to terminate the agent/principal relationship.

Not only have the prospective payors (Fennell and McMahon) disavowed a fee simple interest in the land, they have manifested a clear intention to take only a legal leasehold interest. The execution of the lease agreement is the culmination of the agency/trust activities between the title holder (plaintiff) and Fennell and McMahon. There couldn't be any clearer rebuttal of a resulting trust.

It is concluded that there is nothing unconstitutional about the transaction as set forth in the pleadings and explained in the various affidavits on file.

### DEFENDANT'S CLAIM OF UNDUE INFLUENCE

The defendant has also counterclaimed to void the option agreement because it is alleged that Fennell exercised undue influence over the defendant.

The crux of defendant's argument is that the relationship between Fennell and the defendant was such that it comes within the purview and scope of § 177 of the Restatement of Contracts 2d, § 177. The defendant asserts there are factual issues as to the nature of the relationship between defendant and Fennell and therefore summary judgment treatment is not available.

A. Defendant's Pleading.

The first counterclaim of defendant sets forth his claim of undue influence. He alleges Fennell (an attorney) to be highly educated and to possess "extraordinary powers of persuasion and influence" while the defendant asserts he

865

is a man of "limited education" and can't speak or read English. Defendant further alleges that he assumed Fennell "would not act in a manner inconsistent with (the defendant's) welfare." Lastly, defendant alleges that Fennell represented his three sisters in a family land matter.

B. The Affidavits

The plaintiff supported her motion for summary judgment by filing an affidavit of Mr. Fennell which states that his role in negotiating the option agreements was limited. The file reflects that the option at issue here was actually the 6th one. The first option occurred back in 1980. Over the next years the price of the option and the purchase price were increased after extended negotiations. At all times the defendant utilized a translator of his choice. Mr. Fennell states he never represented the defendant.

In short, the Fennell affidavit affirmatively and positively sets forth a relationship with defendant which can be termed nothing more than negotiating a business transaction. No fiduciary or other relationship can even be implied.

The defendant's affidavit which was filed in opposition does not rebut any of the statements made in the plaintiff's affidavits in so far as the undue influence issue is concerned. Indeed, the affidavit supports the

866

business relationship set forth in the affidavits of Fennell and McMahon. The thrust of the affidavit addresses the "unconstitutional" claim of defendant and the fact that the purchase price set forth in the option agreement is too low.

C. The Law

In replying to a Rule 56 summary judgment motion the adverse party cannot rely on his/her pleading and must come forward with affidavits which show there is a genuine issue of fact for trial. Rule 56(e), Com.R.Civ.Pro.

In order to found an undue influence claim, the defendant must show at this point there are genuine issues of fact that: (1) he was subject to influence; (2) an opportunity of Fennell to exert undue influence; (3) a disposition of Fennell to exert undue influence; and (4) a result indicating undue influence. 25 AmJur2d, Duress and Undue Influence, § 36, p. 397.

The affidavit of the defendant presents no issue of fact to support any of these elements.

Although undue influence is a question of fact depending on the circumstances of each particular case, 25 AmJur2d Duress and Undue Influence, § 49 at p. 409, and therefore not usually susceptible to summary judgment disposition, it is now well settled that summary judgment under Rule 56(c) is mandated, after adequate time for discovery and on motion, against a party who fails to make a showing sufficient to establish the

867

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corporation vs. Catrett, ____U.S.____, 106 S.Ct. 2548, 54 LW 4775 (1986); Fontenot vs. UpJohn Co., 780 F.2d 1190 (5th. Cir. 1986). See also Government, Commonwealth NMI vs. MIU, Civil Action 84-329 and Aizon vs. Commonwealth of the Northern Mariana Islands, Civil Action 84-323.

The defendant does not claim that further discovery time will produce any other facts than those set forth in the affidavits. In fact the defendant stipulated that no further discovery be performed until *after* the resolution of plaintiff's motion for summary judgment.

It is concluded that summary judgment is mandated against defendant on his counterclaim for undue influence.

### DEFENDANT'S CLAIM OF UNCONSCIONABLE CONTRACT

This claim, alleged in the defendant's second counterclaim, deserves little more mention than what has already been said in respect to the undue influence claim. The defendant has not presented any facts to establish that the option to the plaintiff is unconscionable in that it is "such as no man in *his senses and not under delusion will make on the one hand,* and as no honest and fair man would accept on the other." Restatement of Contracts 2d, § 208, Comment b. The purchase price according to the terms of the option is $10 per square meter. The defendant asserts in his affidavit that he is

informed and believes that an anticipated appraisal report will indicate the value of the property to be "greatly in excess" of $10 per square meter. Of course, this belief and speculation by the defendant does not satisfy the requirement of setting forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Com.R.Civ.Pro. In fact the defendant concedes "that neither side has presented sufficient factual basis for summary judgment disposition." Defendant's memorandum in opposition, page 20.

Celotex, supra, is once again applicable. It is a misconception of Rule 56 for the non-moving party to rely on the movant to dispell any basis for the non-movant's case.

## CONCLUSION

There are no genuine issues of fact either as to the allegations in plaintiff's complaint or any of defendant's affirmative defenses and counterclaims. The plaintiff is entitled to specific performance of the option agreement. The Court shall enter summary judgment for the plaintiff.

Dated at Saipan, CM, this  15  day of October, 1986.

_____
Robert A. Hefner, Chief Judge