819 F.2d 547
 1988 A.M.C. 1689
 Noah Larry MARTIN and Judy S. Martin, Individually and as
personal representatives of the Estate of
Christopher L. Martin, deceased,
Plaintiffs-Appellants,
v.
JOHN W. STONE OIL DISTRIBUTOR, INC., Defendant-Appellee.
 No. 86-3747.
 United States Court of Appeals,
Fifth Circuit.
 June 18, 1987.
 
 T. Patrick Baynham, Frank E. Lamothe, III, New Orleans, La., for plaintiffs-appellants.
 George J. Fowler, III, Jeffrey A. Riggs, New Orleans, La., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before WRIGHT,* GEE, and JOLLY, Circuit Judges.
 PER CURIAM:
 
 
 1
 The district court granted the defendant's motion for summary judgment, dismissing this death action under the Jones Act and the General Maritime Law. It is undisputed that Christopher Martin, a seaman aboard the tugboat OLGA STONE, disappeared into the Mississippi River on February 23, 1985, just before the vessel docked. His body was not found for nine months, and an autopsy established drowning as the cause of death.
 
 
 2
 The defendant's motion for summary judgment asserted that there was no evidence of its negligence or causation in Martin's unexplained death. The plaintiffs countered with a copy of the U.S. Coast Guard investigation report and medical reports. Neither report was authenticated. The plaintiffs attempted by these documents to show that the decedent had had a medical history of seizures and that the Coast Guard had determined that "[t]he most probable cause [of Martin's disappearance from the vessel] is that Christopher Martin fell overboard from the OLGA G. STONE due to his medical condition."
 
 
 3
 Crew member Billy Thoulion testified by deposition that he had heard that Martin had fallen overboard, from another vessel, at least once prior to his fatal disappearance. He testified also that he had heard that Martin took "medication," but he did not know the purpose of the medicine.
 
 
 4
 Captain Guilbeau of the OLGA STONE testified by deposition that he, too, had heard that the decedent had fallen overboard from other vessels several times prior to his fatal disappearance and that he had actually seen him fall from a barge. The captain testified that he did not know why Martin had fallen on any of those occasions. The captain had heard of one incident when the decedent was found unconscious, but had not heard that he had a tendency to epileptic seizures.
 
 
 5
 Dr. Walter Truax, a neurologist, testified by deposition that he had treated Martin on January 30, 1985, for an accident that day in which Martin slipped, fell, and hit his head while working on a barge. Although confused and disoriented, Martin did not feel he had been rendered unconscious. The doctor took a history from the patient of epileptic seizures since childhood when a steel plate had been put into Martin's skull. At that examination, the doctor found no medical indication that a seizure had taken place. He found no medical reason for Martin not to return to work, and he could not predict when or whether Martin would have a seizure in the future.
 
 
 6
 The district court granted summary judgment, determining that there was no evidence of the cause of Martin's disappearance from the boat. On appeal, the appellant urge that the inferences from the evidence must be weighed in their favor, precluding summary judgment. They contend that the low evidentiary threshold in Jones Act cases and the inference that Martin fell overboard as a result of a seizure require reversal.
 
 
 7
 The standard of review of a decision granting or denying summary judgment is the same legal standard controlling whether summary judgment is appropriate. Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc., 669 F.2d 1026, 1030 (5th Cir.1982). Summary judgment is proper only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 8
 The party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case.... In assessing whether the movant has met this burden, the courts should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion.... All reasonable doubts about the facts should be resolved in favor of the non-moving litigant.... Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts.... If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.
 
 
 9
 Impossible Electronic Techniques at 1031.
 
 
 10
 In a Jones Act case the burden of the plaintiff to prove causation is "very light." Landry v. Two R. Drilling Co., 511 F.2d 138, 142 (5th Cir.1975). See Chisholm v. Sabine Towing & Transp. Co., 679 F.2d 60, 62 (5th Cir.1975). The jury is entitled to make permissible inferences from unexplained events. Johnson v. United States, 333 U.S. 46, 49, 68 S.Ct. 391, 393, 92 L.Ed. 468 (1948). But a party seeking summary judgment may rely upon the complete absence of proof of an essential element of the other party's cause. Fontenot v. Upjohn Co., 780 F.2d 1190, 1196 (5th Cir.1986). "[T]he movant may discharge his burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his opponent." Id. (quoting 10A C. Miller, A. Wright, M. Kane, Federal Practice and Procedure: Civil 2d Sec. 2727 at 130 (1983) (hereinafter Wright)).
 
 
 11
 Neither the district court nor this court may properly consider hearsay evidence in affidavits and depositions. See Fed.R.Civ.P. 56(e) ("affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence ..."). See Wright, Sec. 2738 at 467 (citing Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950)). Unsworn documents are also not appropriate for consideration. See Oglesby v. Terminal Transport Co., 543 F.2d 1111, 1112 (5th Cir.1976).
 
 
 12
 We may properly consider the affidavits and depositions insofar as they are not based on hearsay or other information excludable from evidence at trial. The question, therefore, is whether a reasonable inference that Christopher Martin fell overboard as a result of a seizure can be drawn from the decedent's history of seizures, his fall a few weeks before his death, not shown to be caused by a seizure, and the fact of his unexplained disappearance.
 
 
 13
 The appellants urge that Dr. Truax misdiagnosed Martin and because of the misdiagnosis, Martin returned to work when he should not have. This contention is not a reasonable inference. The appellants have not submitted any affidavit or other evidence that would tend to support that position.
 
 
 14
 A review of opinions dealing with unexplained drowning of seamen will be helpful in deciding the basic question before us.
 
 
 15
 In Swain v. Mississippi Valley Barge Line Co., 244 F.2d 821 (3d Cir.1957), cert. denied, 355 U.S. 933, 78 S.Ct. 414, 2 L.Ed.2d 415 (1958), a seaman was last seen boarding a docked vessel. The cook had reported to the captain that the seaman was argumentative and intoxicated. The captain had a meal with the seaman and observed that he was slightly intoxicated. That was the last time the seaman was seen alive, and his body was found several months later, a drowning victim. The court held that "[t]he record before us is devoid of any evidence of a causal connection between decedent's condition and his death." Id. at 822.
 
 
 16
 In another case, a seaman disappeared from a moored tanker and his drowned body was found months later. The court rejected arguments that the decedent may have slipped on oil and fallen overboard and that the ship's lighting may have been inadequate. Also rejected was the argument that permitting the decedent to be on duty continuously over the weekend was causal negligence, the court finding that the seaman's duties were "almost nominal." The court's refusal to let the case go to the jury was affirmed. Smith v. Reinauer Oil Transport, Inc., 256 F.2d 646, 648-52 (1st Cir.), cert. denied, 358 U.S. 889, 79 S.Ct. 133, 3 L.Ed.2d 117 (1958).
 
 
 17
 In Gaymon v. Quinn Menhaden Fisheries of Texas, Inc., 118 So.2d 42 (Fla.App.1960), the deceased seaman's drowned body, wearing only an undershirt, was discovered two days after he disappeared from his moored vessel. The rest of his clothes worn prior to his disappearance were found on his bunk. The trial court granted the Jones Act employer's motion for summary judgment.
 
 
 18
 However, the appellate court reversed, holding that a reasonable inference of causal negligence could be drawn from the evidence that the vessel had no toilet for the crew's use. "[T]he crew, in answering the imperious call of nature, were required to precariously suspend themselves in space outside the boat by holding to its top railing." Id. at 44. The court stated that in a prior hearing on the case evidence had established the employer's negligence, linked by circumstantial evidence to the death of the employee. Thus, the question of causation was one for the jury. Id. at 46.
 
 
 19
 The absence of a gangplank for boarding a vessel was held to be sufficient evidence of causal employer negligence to submit to a jury in an otherwise unexplained drowning of a seaman. Harris v. Whiteman, 243 F.2d 563 (5th Cir.1957), rev'd and remanded Butler v. Whiteman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958).
 
 
 20
 The Supreme Court in Schulz v. Pennsylvania R. Co., 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668 (1956), also reversed a decision refusing to submit to a jury the question of an employer's causal negligence. The Court held that evidence that the drowned seaman had to work on four moored tugboats alone with only a hand-held flashlight to guide him at night was sufficient to go to the jury.
 
 
 21
 Generally, in cases submitted to the jury there have been facts showing some negligence on the part of the employer and circumstances allowing a reasonable inference that the negligence caused the injury or death. The case now before us, the death of Christopher Martin, is factually akin to Swain. The causal link between the decedent's medical condition is speculative at best. We cannot draw a reasonable inference that a seizure caused Martin to fall overboard in the absence of any recent prior history of seizures causing him to fall.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Circuit Judge of the Ninth Circuit, sitting by designation