Wayne L. KING

v.

ADAMS TOYOTA, INC., et al.

No. 88–492–B.

United States District Court,
M.D. Louisiana.

Oct. 15, 1989.

Michael R. Connelly, Rogers & Connelly, Baton Rouge, La., for plaintiff.

E. Wade Shows, Shows, Cohn and Cali, Baton Rouge, La., for Adams Toyota and Levis Toyota, Inc.

John Michael Parker and C. Michael Hart, Taylor Porter, Baton Rouge, La., for Louisiana Health Service & Indem. Co.

RULING ON LEVIS TOYOTA, INC.'S MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

Wayne L. King was employed by Adams Toyota, Inc. (Adams) when he suffered a heart attack in July of 1986. In January of 1987, after his employment by Adams had ended, the plaintiff had surgery for his heart condition. The plaintiff contended that he was insured under a group health insurance policy made available by Adams for its employees. He now seeks reimbursement of medical expenses and statutory penalties from the time it was determined that no insurance coverage was provided to plaintiff.

On November 17, 1987, Adams, Levis Toyota, Inc. (Levis), and others entered into an "Act of Sale and Closing Agreement" whereby Adams conveyed certain assets and liabilities to Levis. The Agreement specifically states "that this sale is being fulfilled pursuant to the requirements of the Louisiana Bulk Sales Law." The agreement is silent concerning the health care of the employees of Adams. Levis contends that as the purchaser of certain assets from Adams, it incurred no obligation concerning the health care of the Adams employees which may have arisen before the sale.

This matter is now before the Court on Levis' motion for summary judgment. For reasons which follow, the Court finds that Levis' motion for summary judgment should be granted.

The Louisiana Bulk Sales Law [1] applies to the "transfer in bulk and otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the transferor of any portion or the whole of a stock of merchandise, or merchandise and fixtures, or of all or substantially all of the fixtures or equipment" used

1. La.R.S. 9:2961 et. seq.

in the business.[2] Its purpose is to protect the creditors of the transferor from fraud. The law mandates that: (1) an inventory of the items included in the sale be made; (2) the transferor provide the transferee with a complete list of creditors including the date and amount due; and, (3) the transferee notify the creditors of the sale.[3] In addition, the sale must be advertised in the official journal of the parish of the transferor. The act provides for liability of the transferee for the fair amount of property received if the sale is not in compliance with the act.[4] A creditor as defined in the act means only a creditor "of the transferor with respect to a debt or debts owed by the transferor at the time of the transfer, but not with respect to any debt or debts subsequently arising."[5]

▪ In this case, the plaintiff has alleged no theory on which Levis is liable for plaintiff's medical expenses unless the provisions of the Bulk Sales Law were violated. Thus, it is necessary that the plaintiff prove that the sale was not in compliance with the Bulk Sales Law. However, the record does not contain any evidence to support the plaintiff's statement that a material issue of fact exists as to whether the requirements of the Bulk Sales Law were complied with. The inference from the record that plaintiff did not receive any notice of the sale is not sufficient to deny summary judgment. Levis' duty of compliance under the act is outlined in La.R.S. 9:2962(C) which states:

> The transferee shall at least ten days before the completion of the transfer or payment of any consideration thereof, notify personally, by registered mail or by certified mail, every creditor listed or of whom he has knowledge or can, with reasonable diligence, acquire knowledge, of the time set for the transfer of said

property and a copy of the statement of creditors.

The plaintiff must establish that he was on the creditor list or that Levis knew, or should have known, of this creditor relationship at the time of the sale. In addition, plaintiff must establish that he received no notice. The record fails to establish these facts.

Levis filed a motion for summary judgment with supporting affidavits. The plaintiff may not rely on his pleadings and contentions to defeat Levis' motion for summary judgment, but must come forward with specific facts to prove his claim or to establish material issues of fact in dispute.[6] Plaintiff has failed to produce such evidence and the evidence in the record establishes that Levis complied with the provisions of the Bulk Sales Law.

▪ Furthermore, the Court finds that the plaintiff was not a creditor within the meaning of the Bulk Sales Law. The Bulk Sales Law only applies to *liquidated* claims.[7] Plaintiff relies on *McDowell v. Chambers,* 525 So.2d 343 (La.App. 1st Cir. 1988) in support of this argument that he is a creditor. *McDowell* held that overdue rent payments under a written lease were liquidated. The McDowell court stated:

> A claim or debt is liquidated when it is certain what and how much is due either by agreement of the parties or by operation of law. Black's Law Dictionary, p. 839 (5th ed.1979). A tort claim is not liquidated until it is reduced to judgment. *Cf.* Comment, *The Running of Legal Interest in Louisiana,* 6 Tul.L.Rev. 614 (1982). We perceive *Giarrusso* as holding that a tort claim is not a *debt owed* by a transferor to a creditor for purposes of the Louisiana Bulk Sales Law until the

---

2. La.R.S. 9:2961(A).

3. La.R.S. 9:2962.

4. La.R.S. 9:2961(A) and 2963.

5. La.R.S. 9:2961(B).

6. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986); *Fontenot v. Upjohn,* 780 F.2d 1190 (5th Cir.1986).

7. *See Giarrusso v. Giarrusso Security Services, Inc.,* 367 So.2d 1302 (La.App. 4th Cir.1979) (claim for damages based on libel was not reduced to judgment at the time of the sale and is therefore unliquidated.)

tort claim is reduced to judgment. *Giarrusso* is distinguishable from the instant case because the instant case involves a breach of a lease *contract* which provided for *rents* to be *due* and *owing* on the tenth of each month.[8]

Other examples of unliquidated claims are an attorney fee as a penalty and quantum meruit. *See, for example, Alexander v. Burroughs Corporation*, 359 So.2d 607 (La.1978).[9]

Clearly, the plaintiff's claims for attorney's fees and penalty are unliquidated. Also, the plaintiff's claim for medical expenses is not "certain what and how much is due." [10] Unlike *McDowell*, there is no written or other agreement which evidences the debt. The plaintiff's claims against his former employer, Adams Toyota, whether under Employee Retirement Income Security Act (ERISA) [11] or state law, have not been determined to be valid as of this time. Thus, the plaintiff's claim for medical expense is not certain at this time.

Therefore, the motion for summary judgment filed by Levis should be granted. There are no material issues of fact concerning Levis' compliance with the Bulk Sales Law since plaintiff offered no evidence of noncompliance. In addition, plaintiff is not a creditor within the meaning of the Bulk Sales Law. As a matter of fact and law, Levis is entitled to summary judgment.

---

8. 525 So.2d at 347–48.

9. 525 So.2d at 347, n. 3.

10. *Id.* at 347.

11. Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq.