**Margo NEFF, for Herself and those similarly situated, Plaintiff,**

v.

**AMERICAN DAIRY QUEEN, INC., Defendant.**

**Civ. A. No. SA–94–CA–280.**

United States District Court,
W.D. Texas,
San Antonio Division.

July 14, 1994.

James C. Harrington, Texas Civ. Rights Project, Austin, TX, Pamela Breed Bonavita, Bexar County Legal Aid Ass'n, San Antonio, TX, for plaintiff.

---

Joseph M. Harrison, IV, Haynes & Boone, San Antonio, TX, William L. Killion, Troy A. Bader, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

PRADO, District Judge.

On this date came on to be considered Defendant American Dairy Queen Corporation's ("ADQ") Motion for Summary Judgment, filed in the above-styled and numbered cause on June 14, 1994. After carefully considering all of the papers and pleadings on file, this Court is of the opinion that ADQ's motion should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Ms. Neff originally filed this action in County Court of Law, Bexar County, Texas on February 24, 1994. Ms. Neff, who has a physical disability that requires a wheel chair to gain mobility, brought this action for herself and all those similarly situated pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182. Ms. Neff's complaint alleges that ADQ operates and provides public accommodations in San Antonio that are inaccessible to people with disabilities. Specifically, she complains of a lack of proper parking places and loading areas; excessively heavy exterior doors; water fountains that cannot be used by people with disabilities; inappropriate access ramps; service counters that are too high; drive-through windows that are not accessible to the hearing impaired; and inaccessible public restrooms. Ms. Neff seeks injunctive and declaratory relief requiring compliance with the Americans with Disabilities Act and attorneys' fees and costs.

ADQ removed this action to this Court on April 1, 1994, pursuant to 28 U.S.C. § 1441 because this Court could have had original jurisdiction over this action pursuant to 28 U.S.C. § 1331. On that same date ADQ filed a motion to dismiss claiming, *inter alia*, that ADQ does not own, operate, or lease any of the premises covered by Ms. Neff's complaint. The Court denied that motion as ADQ offered no argument or evidentiary support. However, the Court did state that it would reconsider ADQ's notion if ADQ provided more details as to its position. Order Denying Motion to Dismiss, filed May 6, 1994. ADQ now moves for summary judgment claiming that it does not own, lease, lease to, or operate any Dairy Queen Stores in San Antonio and therefore, Ms. Neff has sued the wrong party to obtain the relief she requests.

ADQ notes that Dairy Queen Stores in San Antonio are owned and operated by R & S Dairy Queen, Inc. ("R & S"), a separate and distinct entity from ADQ. ADQ and R & S do not share common ownership, employees or management. R & S and ADQ have a franchise agreement under which R & S is allowed to operate Dairy Queen Stores. Ms. Neff contends that the franchise agreement between ADQ and R & S gives ADQ de facto operating control over Dairy Queen stores in Texas. Specifically, Ms. Neff points to the Facility Standards and Maintenance section of the Dairy Queen Operating Agreement between ADQ and R & S for one of the San Antonio Dairy Queen Stores. That section requires R & S to first obtain approval of building plans before beginning construction or making any modifications to an existing building.[1] Because the Court concludes that

---

1. Ms. Neff points to three paragraphs of the Dairy Queen Operating Agreement between ADQ and R & S for a single Dairy Queen Store. Paragraph 5.1 states:

   The retail Store shall be constructed and equipped in accordance with Company's approved specifications and standards in effect at the time pertaining to design and layout of the building, and as to equipment, inventory, signage, fixtures, location and design accessory features. Licensee shall not commence construction of the Store until he has received written consent of Company to his building plans. Licensee is solely responsible for obtaining all necessary permits, licenses and/or architectural seals, and in all other respects complying with the applicable legal requirements relating to the building, signs and [unreadable]. Licensee shall be furnished with lists of approved equipment, fixtures and furnishings.

   Paragraph 5.2 states:

   Any replacement, reconstruction, addition or modification in building, interior or exterior

the operating agreement does not give ADQ control over the subject premises for purposes of the Americans with Disabilities Act, the Court concludes that ADQ is entitled to summary judgment on Plaintiff's claims.

## STANDARDS FOR SUMMARY JUDGMENT

■ The Court must address the standard to be applied in determining whether or not to grant summary judgment. Federal Rule of Civil Procedure 56 provides in pertinent part:

> **Motion and Proceedings [on Summary Judgment].** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Defendant, though movant for summary judgment, will not carry the burden of proof at trial as to the issues the Court now faces. Under Supreme Court and Fifth Circuit case law regarding summary judgment, the movant need only present or designate evidence which negates or disproves "the existence of any essential element of the opposing party's claim." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). Once movant has made this showing, the non-movant must then respond with a specific factual showing that there is a genuine issue in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Washington v.*

*Armstrong World Industries, Inc.*, 839 F.2d 1121, 1123 (5th Cir.1988).

■ In order to survive a motion for summary judgment, the non-movant must raise a genuine dispute as to a *material* fact. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Genuine disputes over irrelevant, immaterial or unnecessary facts will not render summary judgment inappropriate. *Id.*; *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir.1988).

## APPLICABILITY OF THE AMERICANS WITH DISABILITIES ACT

■ The Americans with Disabilities Act states:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). In this case, the parties agree that ADQ does not own, lease, or lease to any of the premises about which Ms. Neff complained. Instead, the parties debate whether ADQ operates the subject premises. Furthermore, Ms. Neff does not allege that ADQ refused to give its approval to construction plans or modifications that would bring Dairy Queen Stores into compliance with the act. Rather, Ms. Neff argues that ADQ has an affirmative duty to enforce compliance with the American with Disabilities Act among its franchisees.

The Americans with Disabilities Act does not define "operates". In the context of this case, however, the Court concludes that ADQ

decor or image, equipment or signage, to be made after Company's consent is granted for initial plans, whether at the request of Licensee or Company, shall be made in accordance with written specifications which have received the prior written consent of Company, which shall not be unreasonably withheld.

Finally, Paragraph 5.3 states:

The building, equipment and signage employed in the conduct of Licensee's business shall be maintained in accordance with requirements established periodically by Company, or rea-

sonable, specific lists prepared by Company based upon periodic inspections of the premises by Company's representatives. Within a period of ninety (90) days after the receipt of any particular maintenance list, Licensee shall effect the items of maintenance designated therein including the repair of defective items and/or the replacement of unrepairable or obsolete items of equipment and signage. Routine maintenance shall be conducted in accordance with general schedules published by Company.

does not operate the San Antonio Dairy Queen stores under any definition of the word. ADQ licenses other entities to use its trademark in compliance with standards established by ADQ. Although ADQ maintains the right to approve all construction plans and modifications, Ms. Neff has provided no evidence that ADQ can require an existing franchise to make modifications to an existing structure.[2] Nor has Ms. Neff shown that ADQ has exercised its approval rights in any way inconsistent with the Americans with Disabilities Act. Had ADQ refused to approve a franchisee's plans to bring a store in compliance with the act, then ADQ might be subject to liability. This Court concludes, however, that merely possessing a veto power over proposed plans and modifications does not constitute operating for purposes of the Americans with Disabilities Act.

Cases cited by Ms. Neff for the proposition that a franchisor can be liable for violations of civil rights under other statutes by franchisees do not aid the Court in this case. In *Bradley v. Pizzaco of Nebraska, Inc.*, 7 F.3d 795 (8th Cir.1993), the Eighth Circuit found that a franchisor could be liable for employment discrimination when a franchisee fired an employee for violations of a policy established by the franchisor. In the present case, Ms. Neff has produced no evidence that any Dairy Queen has failed to comply with the Americans with Disabilities Act because of a policy of ADQ.[3] Therefore, the Court concludes that ADQ does not control the San Antonio Dairy Queen stores for purposes of the Americans with Disabilities Act and summary judgment should be granted in favor of ADQ.

Accordingly, it is hereby ORDERED that ADQ's Motion for Summary Judgment is GRANTED such that Plaintiff take nothing on her claims.

It is further ORDERED that all other pending motions are DENIED AS MOOT.

---

2. A case in the Northern District of Texas came to the same conclusion:

As to the non-procedural grounds upon which Plaintiff relies, Plaintiff seeks to establish that Defendant (ADQ) is exerting such control over its franchisee so as to be operating the restaurant. Plaintiff cites portions of the franchise agreement relating to construction, modification and maintenance of the facilities which require prior written consent of the franchisor before performing such acts. Notwithstanding, the ADA requires that the person liable either "own, lease (or lease to), or operate" the facility in question. Retaining architectural control cannot be tantamount to operating a facility which one does not own or lease.

*Young v. American Dairy Queen, Inc.*, No. 5:93–CV–253–C 1994 WL 761233 (N.D.Tex., filed June 22, 1994).

3. The case of *Wheeler v. Hurdman*, 825 F.2d 257 (10th Cir.1987), similarly provides no help for Plaintiff. That case addressed the question of whether a partner in a partnership could be considered an employee for purposes of the Civil Rights Act of 1964.