Betty McCORMICK, Appellant,

v.

**EL PASO ELECTRIC COMPANY
and Don Proulx, Appellees.**

No. 08–98–00080–CV.

Court of Appeals of Texas,
El Paso.

April 29, 1999.

Mara Asya Blatt, El Paso, for Appellant.

Gary B. Weiser, Claudia Dorgan Roberts, El Paso, Sylvia Gomez, El Paso, for Appellees.

BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

This is an appeal from the trial court's final judgment adopting an arbitrator's award in favor of Betty McCormick ("McCormick") and disposing of all of the causes of action pleaded by McCormick. We reverse and remand.

McCormick was employed by El Paso Electric Company ("EPEC") on September 12, 1994. McCormick's original supervisor at EPEC was Don Proulx ("Proulx"). On October 25, 1994, McCormick filed a grievance notifying EPEC of her allegations that she had been sexually harassed by Proulx. McCormick's grievance was filed pursuant to the grievance procedure defined in the collective bargaining agreement ("CBA") between EPEC and Local Union No. 960 of the International Brotherhood of Electrical Workers ("the Union"). As a member of the Union, McCormick's relationship with EPEC was governed by the provisions of the CBA. McCormick was represented by the Union in the grievance proceedings under the CBA.

In Section 2 of Article III, the CBA provides that "[a]ny grievance which may arise between any member of the Bargaining Unit and the Company ..." will be settled using the four-step grievance procedure established by the CBA. If either party is unsatisfied with the resolution of the grievance through the four-step grievance procedure, Section 3 of Article III of the CBA provides that the grievance may be referred to arbitration which will be final and binding.

The Union pursued McCormick's grievance through "Step 4" of the grievance process. After the completion of "Step 4," the Union did not request that the grievance be referred to arbitration as provided in Section 3 of Article 3 of the CBA. McCormick did not wish to proceed to arbitration because she believed a referral to arbitration would prevent her from pursuing her causes of action under state law in a judicial forum.

On February 5, 1996, McCormick filed suit against EPEC and Proulx in a district court asserting state law claims for sexual harassment and the intentional infliction of emotional distress. On April 19, 1996, EPEC and Proulx asked the trial court to stay the pending litigation and compel the parties to binding arbitration pursuant to the terms of the CBA. The trial court granted the motion of EPEC and Proulx, stayed the litigation, and compelled the parties to arbitration according to the terms of the CBA.

Following the hearing and briefing by the parties, the arbitrator, a professor of management and labor relations at Baylor University, entered his award favoring McCormick. The arbitrator found that (1) McCormick had been subjected to a hostile work environment by Proulx, her supervisor, (2) EPEC acted promptly to stop the sexual harassment once it was notified, (3) EPEC disciplined Proulx, (4) EPEC and Proulx did not retaliate against McCormick, (5) punitive damages were not warranted, (6) EPEC was liable to McCormick for unpaid medical expenses and lost wages through the date of the award that

were related to the harassment, and (7) no interest should be awarded.

After the arbitrator reported his findings, McCormick moved the trial court to lift the stay and allow her to proceed to trial on the merits of her state law causes of action. In response, EPEC and Proulx filed their motion to enforce the arbitration award and deny McCormick's motion to lift the stay. On February 12, 1998, the trial court entered its order denying McCormick's motion to lift the stay. The trial court also signed a judgment disposing of all claims and adopting the arbitrator's award. McCormick appeals from this judgment.

■ The paramount issue presented by this appeal is whether the general arbitration clause contained in the CBA required McCormick to use the CBA's arbitration procedure to resolve her claims arising under both the Texas Commission on Human Rights Act ("TCHRA")[1] and the common law.[2] We first note that the purpose of the TCHRA is to correlate state law with federal law in the area of employment discrimination. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex.1991); *Gold v. Exxon Corp.*, 960 S.W.2d 378, 380 (Tex.App.—Houston [14th Dist.] 1998, no writ); *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 677 (Tex.App.—El Paso 1997, writ denied). *See* Tex.Lab.Code Ann. § 21.001(1)–(3)(Vernon 1996)(purpose of chapter is to provide for the execution of the policies of federal employment discrimination law, including Title VII of the Civil Rights Act of 1964, Title I of the Americans with Disabilities Act of 1990, and their subsequent amendments). Accordingly, Texas courts have looked to pertinent federal precedent when interpreting the relevant portions of the TCHRA. *See Specialty Retailers, Inc. v.*

*DeMoranville,* 933 S.W.2d 490, 492 (Tex. 1996)(when interpreting relevant portions of the TCHRA "federal case law may be cited as authority").

In a recent opinion, a unanimous United States Supreme Court addressed the pivotal issues of the case at bar. *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361(1998). In that case, Wright, a longshoreman, filed suit in federal district court alleging employment discrimination under the Americans with Disabilities Act of 1990 ("ADA"). *Id.* at 394. Even though Wright's relationship with his employer was governed by a CBA that provided for a grievance procedure, including mandatory arbitration, Wright did not pursue any remedies under the CBA's grievance procedure before filing suit. *Id.* The trial court dismissed Wright's lawsuit because Wright failed to pursue the grievance procedure provided by the CBA. Wright appealed and the Fourth Circuit Court of Appeals affirmed the trial court reasoning "that the general arbitration provision in the CBA governing Wright's employment was sufficiently broad to encompass [Wright's] statutory claim arising under the ADA, and that [the arbitration] provision was enforceable." *Id.*

In its review of the decision of the Court of Appeals, the Supreme Court first addressed whether the presumption of arbitrability applied to statutory employment discrimination claims when the employer-employee relationship was governed by a CBA. The Court held that the presumption of arbitrability did not extend "beyond the reach of the principal rationale" that justified it, which was "that arbitrators are in a better position than courts to interpret the terms of a CBA." *Wright,* 119 S.Ct. at

1. *See* Tex.Lab.Code Ann. § 21.051 (Vernon 1996); *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 677 (Tex.App.—El Paso 1997, writ denied)(sexual harassment is a form of sex discrimination prohibited by the TCHRA).

2. McCormick's claim for the intentional infliction of emotional distress arises under the common law and is beyond the scope of the TCHRA. *See Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993)(expressly recognizing the tort of intentional infliction of emotional distress).

395, *citing AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). However, when the employee's claim arises out of a federal statute such as the ADA, the dispute ultimately concerns the meaning of federal law, not the interpretation of the terms of the CBA. *Wright*, 119 S.Ct. at 396. This is true even if the CBA incorporates federal employment discrimination law by reference, "thereby creating a contractual right that is coextensive with the federal statutory right...." *Id.* Thus, the Court concluded that claims which concern the interpretation of federal law as the ultimate issue will not be presumed to be subject to arbitration under a CBA. *Id.*

Without addressing whether a union-negotiated waiver of an employee's statutory right to a judicial forum for claims of employment discrimination can ever be valid, the Court held that such a waiver must be clear and unmistakable. *Id.* at 396–97. Explaining that the right to a federal judicial forum is of sufficient importance to be protected against a less-than-explicit union waiver in a CBA, the Court stated that:

> '[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is "explicitly stated." More succinctly, the waiver must be clear and unmistakable.'

*Id.* at 396, *quoting Metropolitan Edison Co. v. Nat'l Labor Relations Board*, 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983). Finding the general arbitration clause in the CBA did not meet the clear and unmistakable standard, the Court vacated the judgment of the Court of Appeals and remanded the cause for further proceedings. *Wright*, 119 S.Ct. at 397.

In the case at bar, the CBA defines "a grievance" as "a disagreement concerning the interpretation or application of the terms of [the CBA]." The CBA also provides that "[a]ny grievance" between any employee and EPEC will be resolved using the four-step grievance procedure and arbitration. If the dispute is referred to arbitration under the CBA, the CBA limits the arbitrator's authority. Under the provisions of the CBA, an arbitrator's "sole function shall be to decide issues on the basis of facts and proper application and interpretation of this [CBA]."

■ The causes of action pleaded by McCormick in her lawsuit arise under the provisions of the TCHRA and the common law, not the provisions of the CBA. The provision of the CBA which provides that EPEC will not violate federal or state employment discrimination laws does not alter the statutory focus of McCormick's sexual harassment claim. Rather, the provision merely creates a contractual right that is coextensive with McCormick's federal and state statutory rights. *See Wright*, 119 S.Ct. at 396–97 (even if CBA incorporates federal discrimination law by reference, thereby creating a contractual right that is coextensive with the federal statutory right, the claim will not be subject to the arbitration clause of CBA absent a clear and unmistakable waiver of right to a judicial forum). Also, the provisions of the CBA limiting the scope of the grievance procedure and the arbitrator's authority conclusively establish that the grievance procedure, including arbitration, could only be utilized to resolve disputes concerning contractual rights under the CBA, not claims arising under either the TCHRA or the common law.[3] Thus, we

---

**3.** The provision defining a grievance as "a disagreement concerning the interpretation or application of the terms of [the CBA]" precludes any finding that McCormick's cause of action for the tort of intentional infliction of emotional distress was subject to the CBA's grievance procedure, including the arbitration provision. Also, we can find no provision in the CBA which would encompass the intentional torts of EPEC employees, whether or not the tortfeasor is a member of management and EPEC is subject to liability through a doctrine such as respondeat superior.

hold that the general arbitration clause in this CBA fails to meet the clear and unmistakable standard established in *Wright.* Because the arbitration provision did not meet this standard, McCormick has not waived her right to have her claims resolved in a judicial forum. The arbitrator's award in this case does nothing more than resolve the contractual disputes arising under the CBA. McCormick's sexual harassment claim arising under the TCHRA and her intentional infliction of emotional distress claim are still unresolved. *See Wright,* 119 S.Ct. at 396 (absent a clear and unmistakable waiver, causes of action which do not arise out of the provisions of the CBA, but out of federal employment discrimination statutes will not be subject to general arbitration clause in the CBA). Therefore, we conclude that the trial court erred when it adopted the arbitrator's award as its own judgment disposing of all of McCormick's claims.[4]

Because McCormick has not asked either this Court or the trial court to vacate the arbitrator's award, we will not address the issue raised on appeal concerning whether the trial court erred when it compelled the parties to arbitration under the provisions of the CBA, insofar as the arbitration concerned contractual rights arising under the provisions of the CBA. Also, because the effect of our opinion in this case is to vacate the judgment of the trial court, we will not address whether the trial court erred when it failed to award interest on the judgment pursuant to the mandatory provisions of TEX.FIN.CODE ANN. §§ 304.002–.003 (Vernon 1998).

Accordingly, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

---

4. We note that the trial court did not have the benefit of the United States Supreme Court's opinion in *Wright v. Universal Maritime Serv. Corp.* when it rendered its judgment.