D'Ann CHILDRESS, Plaintiff,

v.

PETSMART, INC., Defendant.

No. Civ.A.EP–99–CA–85–EP.

United States District Court,
W.D. Texas,
El Paso Division.

March 20, 2000.

Steven W. Sloan, Thompson & Knight, P.C., Dallas, TX, Bryan P. Neal, Thompson & Knight, P.C., Dallas, TX, Anna Elizabeth Marple, Thompson & Knight, P.C., Dallas, TX, for Petsmart, Inc., defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PRADO, District Judge.

On this date the Court considered the Defendant's motion for summary judgment, filed February 28, 2000, and the Plaintiff's response to that motion. After careful consideration, the Court will grant the motion.

This is a suit brought under Title VII of the Civil Rights Act of 1964 and the Texas

Commission on Human Rights Act (TCHRA). Plaintiff, D'Ann Childress, asserts that her former employer, PetsMart, Inc., is liable to her for sexual harassment, sexual discrimination, negligent misrepresentation, intentional infliction of emotional distress, and the negligent hiring, supervision, and training of its former employee Brian Frankel. Defendant moves for summary judgment on each claim.

## FACTS AND PROCEDURAL HISTORY

Childress began working for PetsMart in January 1995. In the summer of that year, she took a leave of absence in anticipation of the birth of her daughter; she returned to work as a cashier in November. Her supervisor was Brian Frankel.

In December 1996, Childress filed an EEOC complaint against PetsMart, which was dual-filed with the Texas Commission on Human Rights. In her complaint, Childress alleged that Frankel had sexually harassed her on the job, by making sexual comments and innuendos and by "repeatedly scratch[ing] his crotch and adjust[ing] his pants in the crotch area."

PetsMart placed Frankel on suspension and instigated an investigation of Childress's allegations, interviewing Childress, Frankel, and all the store's employees. PetsMart determined that Frankel had, in fact, engaged in and tolerated inappropriate behavior. Although the record is not clear on this issue, apparently PetsMart offered Frankel the opportunity to voluntarily resign his position, which he did in August 1997.

During its investigation of the EEOC complaint, PetsMart informed Childress, and all the employees that it interviewed, that the interviews were to be kept confidential and that failure to keep the interviews confidential could result in adverse employment action. According to PetsMart, Childress discussed the investigation with other employees and, when PetsMart suspended her for that conduct, contacted employees to discuss the suspension. PetsMart fired Childress on January 31, 1997.

## SUMMARY JUDGMENT STANDARD

In the usual case, the party who seeks summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. *See Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548; *Lavespere*, 910 F.2d at 178.

Once the moving party has carried that burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. The nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings; rather, that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. In order for a court to find there are no genuine material factual issues, the court must be satisfied that no reasonable trier of fact could have found for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a

reasonable jury to return a verdict for the nonmovant. *See Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505; FED.R.CIV.P. 56(e).

Where the party opposing the motion for summary judgment will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, summary judgment may be entered against him. *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548; *Fontenot,* 780 F.2d at 1194–95.

## DISCUSSION

■ Childress seeks to hold PetsMart, Frankel's employer, responsible for Frankel's alleged harassment. The question of whether employer liability for harassment should be imposed involves an initial determination of whether the alleged harassment affected the "terms, conditions, or privileges" of employment. If the harassment culminated in a "tangible employment action," such an effect is always present, and the employer will be held liable. *Burlington Indus. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). If there is no tangible employment action, the employer will only be held liable if the alleged harassment created for the plaintiff a hostile work environment and if the defendant employer cannot prove a defense to liability. *Id.* at 764, 118 S.Ct. 2257.

■ The Court agrees with PetsMart that Frankel's alleged harassment did not culminate in a tangible employment action. It is true that Childress's employment with PetsMart was terminated. However, there is no evidence that the discharge was a result of any harassment Childress suffered. Childress does not even allege that this is the case. Instead, Childress's claim is clearly that she was dismissed in retaliation for filing her EEOC complaint. A desire for such retaliation cannot be tied to Frankel's conduct or Frankel's desires; Frankel had been suspended at the time

Childress was terminated; Frankel himself ultimately resigned under pressure to do so. *Id.*

Because no tangible employment action resulted from the alleged harassment, the Court must consider whether the harassment created a hostile working environment for Childress and whether PetsMart has proven its affirmative defense to such a claim.

■ The Court agrees with Childress that a fact issue exists regarding whether Frankel's conduct created a hostile working environment. Childress alleges that (1) during the time she was extracting breast milk to feed her infant daughter, Frankel made several off-color remarks, including asking whether Childress had "enough to go around;" (2) after almost falling into a large box, Childress joked, "the box almost ate me!" to which Frankel responded, "lucky box!"; (3) Frankel attempted to engage Childress in a discussion about nude jacuzzi parties; (4) Frankel, at a pool party, pretended to be tickling Childress's daughter in order to touch Childress's breasts; (5) during a discussion about Childress needing enough money to support her children, Frankel said "I'd pay ya to lay ya. I'd tie you to the bed and leave you there. You'd be lucky if you could reach the phone to dial 911;" (6) after hearing Childress sing the lyrics to a song, a portion of which were "I don't want to leave you lonely," Frankel said, "drop your pants, baby, and I'll never leave you lonely;" and (7) Frankel frequently adjusted his trousers and/or scratched himself around Childress in a suggestive manner. The Court believes a jury could conclude that this conduct amounted to more than just "socializing in the workplace, horseplay, intersexual flirtation, gender-related jokes, the sporadic use of abusive language, and/or occasional teasing," which is how PetsMart would characterize the conduct. *See Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140

L.Ed.2d 201 (1998) (Title VII is more than a civility code).

■ However, the Court finds that PetsMart has proven its affirmative defense to this claim. An affirmative defense to a hostile work environment claim is proved where the employer exercised reasonable care to prevent and correct promptly any harassment and where the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to otherwise avoid harm. *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257.

■ The undisputed evidence shows that PetsMart made available several avenues for bringing claims of sexual harassment to the attention of the company. The company had an anti-harassment policy and encouraged complaints. The company had instituted a "Care–Line," or a toll-free number that employees were invited to use to bring problems to the company's attention in a non-threatening forum. In addition, the company had an explicit "open door" policy with regard to employee complaints and/or problems. However, Childress did not avail herself of any of these options.

According to Childress, other employees informed her that complaints would be futile. The Court finds this justification insufficient to rebut PetsMart's defense. Childress's failure to take advantage of established avenues for complaints precludes PetsMart from proving the falsity of these speculations. Just as certainly, it prevents Childress from proving their truth. Had Childress made the complaints and had PetsMart failed to respond to them, Childress's case before this Court could only have been strengthened. As it is, the Court cannot speculate that Pets-Mart would have been unresponsive. Nor would it be fair to hold PetsMart legally liable for an employee's conduct at a time it did not know of such conduct. *See Ellerth*, 524 U.S. at 764, 118 S.Ct. 2257 (noting Title VII goals of "encouraging forethought by employers and saving action by objecting employees").

Finally, the Court notes that, when PetsMart became aware of Childress's EEOC complaint, PetsMart immediately began an internal investigation and suspended Frankel within days of reviewing the complaint. Frankel was later forced to resign.[1]

■ The Court finds that PetsMart has established is affirmative defense to Childress's hostile work environment claim. PetsMart had available avenues for its employees to complain of sexual harassment, and Childress unreasonably failed to avail herself of those avenues. Moreover, PetsMart acted promptly when it was informed of Frankel's behavior, and PetsMart corrected the problem. The Title VII claim will be dismissed. Because the Texas anti-discrimination statute, the Texas Commission on Human Rights Act, was designed to implement federal employment policies, *see McCormick v. El Paso Electric Co.*, 996 S.W.2d 241, 243 (Tex.App.—El Paso 1999, no pet.), it, too, will be dismissed.

### Sexual Discrimination

■ Childress also alleges that Pets-Mart discriminated against her on the basis of gender by forcing her to endure Frankel's behavior, by not promoting her to "Specialty Manager" and by not treating her the same as Frankel, who was permitted to resign while she was terminated. The Court finds no claim here. As both parties acknowledge, the "forcing her to endure" claim is really a restatement of the harassment claim, which the Court has dismissed. There is no separate claim

1. The Court is uncertain what to make of Childress's complaint that PetsMart negotiated a "forced" resignation with Frankel rather than terminating him. The fact is that Frankel did not return to PetsMart after he was suspended for conduct that PetsMart agrees he was guilty of (although PetsMart disputes that such conduct rises to the level of harassment). The Court is not sure that Title VII demands more.

stated. As for Childress's complaint that she was not promoted to Specialty Manager, Childress concedes that this claim was not raised in her EEOC complaint and is thus barred.

 Finally, Childress's claim that Frankel was treated differently from her is not actionable. It was not raised before the EEOC. It is not, as PetsMart notes, an adverse personnel action *against Childress.* Moreover, Frankel was a supervisor, Childress an hourly employee. The two were fired/forced to resign for different reasons. No sound basis for comparing the two cases exists.

### Retaliatory Discharge

Childress concedes that she failed to raise this claim before the EEOC. It must be dismissed.

### TORT CLAIMS

 Childress's tort claims are barred by the two-year statute of limitations for such claims. Childress was suspended on January 22, 1997, and terminated on January 31, 1997. She filed this lawsuit on January 29, 1999, and can thus only recover for injuries she sustained on or after January 29, 1997. Childress's argument that the torts alleged here amount to continuing torts existed is untenable. Moreover, the Court does not agree that the two acts that occurred after January 29, 1997—Childress's discharge and Pets-Mart's alleged failure to inform her of her position at the store—amount to intentional infliction of emotional distress. In addition, Childress's claims of intentional infliction of emotional distress, negligent hiring, supervision, training, and retention all suffer fatally from lack of evidentiary support.[2]

Thus, each of Childress's tort claims must be dismissed.

---

2. For example, Childress alludes in her response to an attempted suicide, as support for her claim that she was subjected to intention-

### CONCLUSION

ACCORDINGLY, it is ORDERED that the Defendant's motion for summary judgment is GRANTED, and this case is DISMISSED. All pending motions are denied as moot.

al infliction of emotional distress. She offers absolutely no evidence of such an incident.