**H.E. BUTT GROCERY COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. SA–98–CA–336–EP.

United States District Court, W.D. Texas, San Antonio Division.

Feb. 9, 2000.

Charles J. Muller, III, Strasburger & Price, L.L.P., San Antonio, TX, Tobey Blanton, Vinson & Elkins, L.L.P., Houston, TX, Farley P. Katz, Strasburger & Price, L.L.P., San Antonio, TX, Karl S. Stern, Vinson & Elkins, L.L.P., Houston, TX, Anthony Ernest Rebollo, III, Strasburger & Price, L.L.P., San Antonio, TX, John P. DeGeeter, Vinson & Elkins, L.L.P., Houston, TX, for H.E. Butt Grocery Company, plaintiff.

Michael D. Powell, U.S. Department of Justice, Dallas, TX, for United States of America, defendant.

## ORDER

PRADO, District Judge.

On this date the court considered Plaintiff's Motion for Reconsideration of Partial Summary Judgment, Plaintiff's Motion to Amend Complaint, and Plaintiff's Motion for Leave to Supplement Witness List, as well as Defendant's responses to these motions. The United States has indicated that it does not oppose the Motion for Leave to Supplement Witness List to the extent that it only adds fact witnesses. After careful consideration, the Court will grant the Motion for Reconsideration in part and deny it in part, grant the Motion to Amend, and deny the Motion for Leave to Supplement Witness List as to James E. Conner, and grant the Motion for Leave to Supplement Witness List for all other witnesses.

### Background and Procedural History

This case involves three separate issues, all concerning H.E. Butt Grocery Company's ("HEB") federal income tax returns for the fiscal years 1991 and 1992. First, in filing its returns, HEB deducted as business expenses certain amounts paid in connection with HEB's investigation of the feasibility of expansion into Mexico. The amount of these deductions totaled

$883,062 in 1991 and $715,871 in 1992. The second issue concerns amended returns filed by HEB. These amended returns included additional depreciation deductions for assets which HEB claimed had been wrongly classified under the Modified Accelerated Cost Recovery System. Finally, HEB sought a $387,720 credit under the Targeted Jobs Tax Credit program for wages paid to 1,727 of its employees in the 1992 fiscal year. HEB argues that these employees qualified for the credit, but their qualifications were never certified by the local agency because funding for the certification program terminated while HEB's requests were pending.

By order dated July 30, 1999, the Court denied HEB's motion for partial summary judgment and granted partial summary judgment in favor of the United States. The Court ruled that HEB was not entitled to summary judgment on the Mexico expansion issue, but that the United States was entitled to summary judgment in its favor on the issues of the additional depreciation deductions and the Targeted Jobs Tax Credit. Specifically, the Court stated that the change in classification of assets was a change in method of accounting requiring the prior consent of the Commissioner of Internal Revenue, and that HEB was not entitled to receive the Targeted Jobs Tax Credit because the employees whose wages are in question were never certified as being members of a targeted group. *See* Docket No. 55. HEB has now filed a motion for reconsideration of the targeted jobs tax credit issue and the issue of its additional depreciation deductions. HEB does not request reconsideration of its motion for summary judgment concerning the Mexico expansion issue.

Orders granting partial summary judgment can be changed prior to the entry of final judgment on all the parties' claims. *See* FED.R.CIV.P. 54(b). Therefore, the Court will re-examine its decision.

## Summary Judgment Standard

In the usual case, the party who seeks summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. *See Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548; *Lavespere*, 910 F.2d at 178.

Once the moving party has carried that burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir.1991). The nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings; rather, that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Fields*, 922 F.2d at 1187. In order for a court to find there are no genuine material factual issues, the court must be satisfied that no reasonable trier of fact could have found for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See*

*Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505; FED.R.CIV.P. 56(e).

Where the party opposing the motion for summary judgment will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, summary judgment may be entered against him. *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548; *Fontenot,* 780 F.2d at 1194–95.

### Additional Depreciation Deductions and Method of Accounting

Before a taxpayer changes its method of accounting, it must first secure the permission of the Commissioner of the Internal Revenue Service. 26 U.S.C. § 446(e); 26 C.F.R. § 1.446–1(e). It is undisputed that HEB did not obtain the Commissioner's permission before filing its amended returns.

Method of accounting is defined by the regulations as including "not only the overall method of accounting of the taxpayer but also the accounting treatment of any item." 26 C.F.R. § 1.446–1(a)(1). A change in accounting requiring the Commissioner's approval could include the "change in the treatment of any material item used in such overall [accounting] plan." 26 C.F.R. § 1.446–1(e)(2)(ii)(a). A material item is considered to be any item involving "the proper time for the inclusion of the item in income or the taking of a deduction." *Id.* On the other hand, a change in the method of accounting excludes "correction of mathematical or posting errors, or errors in the computation of tax liability ... [or] adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction." 26 C.F.R. § 1.446–1(e)(2)(ii)(b). Similarly, it does not include "an adjustment in the useful life of a depreciable asset." *Id.*

In its motion for reconsideration, HEB makes two arguments. The first is that, by reclassifying certain assets, it did not change its method of accounting; its method of accounting relating to depreciation, MACRS, remained the same. Rather, it argues that the change was more like a computational error, or like a change in useful life. Secondly, HEB argues that fact issues remain whether some of the reclassifications merely reflect clerical errors, which would fall outside the definition of change of method of accounting.

Under the Modified Accelerated Cost Recovery System (MACRS)[1], assets are placed into one of ten classes. 26 U.S.C. § 168. Some kinds of property are assigned to a specific class, otherwise, property is classified based on its class life. 26 U.S.C. § 168(e). *See also* Rev.Proc. 87–56, 1987 WL 350424. The classification of property determines the applicable recovery period for that property. 26 U.S.C. § 168(c). The recovery period is the period over which the cost of an asset is recovered—the period over which depreciation deductions are taken. *See* MERTENS, THE LAW OF FEDERAL INCOME TAXATION § 23.01.

In addition to the recovery period, MACRS sets out the applicable depreciation method for assets. In general, assets are depreciated by using the 200 percent declining balance method, with a switch to the straight line method when this switch would result in a larger depreciation deduction. 26 U.S.C. § 168(b)(1). However, for 15 or 20 year property (among other categories), the applicable method of depreciation is the 150 percent declining balance method, later switching to the straight line method. 26 U.S.C. § 168(b)(2). The straight line method is required for some asset classes, including nonresidential real property. 26 U.S.C. § 168(b)(2).

---

1. MACRS is generally the required system for depreciation unless the taxpayer opts otherwise.

In this case, HEB, when placing new stores in service between 1987 and 1992, divided the stores' components into asset classes. As a result of a cost-segregation study, HEB now believes that it incorrectly classified some of the components and seeks to take additional depreciation deductions based on their correct classifications. Specifically, HEB argues that some fixtures and equipment (with a 5–year recovery period and a 200 percent declining balance method of depreciation) and some site materials (with a 15–year recovery period and a 150 percent declining balance method of depreciation) were erroneously classified as non-residential real property (with either a 31.5 [2] or 39–year recovery period and with the straight line method of depreciation). Accordingly, HEB seeks the additional depreciation deductions it would have taken had these items been properly classified.[3]

■ Clearly, to the extent that some of the errors were caused by data entry errors (entering the wrong asset code), HEB's corrections were not changes in its method of accounting. *See* 26 C.F.R. § 1.446–1(e)(2)(ii)(b) (excluding correction of mathematical and posting errors from the definition of change in method of accounting). Therefore, those corrections would not require the Commissioner's approval, and the United States is not entitled to summary judgment on these items. HEB has claimed that these kind of errors resulted in a loss of depreciation deductions of $132,092 in 1991 and $107,619 in 1992. Therefore, the grant of summary judgment for the United States on these errors will be withdrawn. Because HEB has established that these were errors,[4] and the United States has not established the existence of a fact question, summary

judgment on these amounts in HEB's favor is appropriate.

Additionally, the IRS cannot really argue that by reclassifying a some of its assets HEB has changed its overall method of accounting. HEB is correct when it states that its overall method of accounting has remained the same.

Instead, the focus turns to whether HEB's change in the treatment of various assets is a change in the treatment of a material item. The IRS argues that the reclassification "involves the proper time for the ... taking of a deduction." 26 C.F.R. § 1.446–1(e)(2)(ii)(a). Therefore, according to the IRS, the reclassification resulted in a change in HEB's treatment of a material item. Relevant to this determination is whether the change affects the total amount of lifetime income (which would not involve the proper time to take a deduction) or whether it just changes the tax year in which income is reported. *See* Rev.Proc. 97–37, 1997 WL 430911.

■ There is no question that HEB's changes involve the timing of deductions. The total amount of depreciation has not changed. Rather, HEB seeks to shorten the time over which the deductions are taken and to increase the percentage of the cost it may recover in a year. This change affects the year in which deductions are taken, rather than the overall amount of deductions. Therefore, the change would be a change in the treatment of a material item. *See* Rev.Proc. 97–37, 1997 WL 430911.

HEB argues that the Court should analogize to the treatment of "useful life" under the Regulations. The Regulations provide that a change in the useful life of

---

**2.** The recovery period is 31.5 years for non-residential real property placed into service before May 13, 1993.

**3.** The United States does not really seem to contend that the items were originally correctly classified, except that it states that component depreciation is not allowed under MACRS. The United States does not distin-

guish these components from other components that HEB "was also consistently depreciating ... as site or fixtures and equipment." United States' Response in Opposition to Plaintiff's Motion for Reconsideration.

**4.** Second Supplemental Declaration of Megan Rooney.

an item is not a change in the treatment of a material item. 26 C.F.R. § 1.446–1(e)(2)(ii)(b). Prior to the introduction of MACRS, taxpayers would determine the useful life of an item, and the recovery period for that item would be its useful life. *See, e.g. Knight–Ridder Newspapers, Inc. v. United States,* 743 F.2d 781, 785 (11th Cir.1984). Now, under MACRS, the term "useful life" is no longer relevant; it has been replaced by class life. Additionally, the idea of the time over which an asset is depreciated has become intertwined with the method of depreciation. However, HEB argues that class life is essentially the same as useful life, and, therefore, should be treated the same way.

The stated reason in the Regulations for the treatment of a change in the useful life of an asset is that changes in useful life are typically made by an adjustment in the current and later years. 26 C.F.R. § 1.446–1(e)(2)(ii)(b). The Regulations give no other explanation why useful life should be treated differently than other changes in the timing of deductions.

For several reasons, the Court is hesitant to expand the exception for change in useful life in the way HEB suggests. First, with the relationship between class life and depreciation method, the change in the class life has a more dramatic effect than the change in useful life under the previous system. Additionally, the rationale provided by the Regulation, that a change in useful life is typically made by an adjustment in later years, does not apply to HEB's situation. HEB seeks to amend previous returns; it is not making a change on the returns for later years. The Court is unwilling to extend the exception for change in useful life beyond its reasoning. Therefore, the Court will not change its previous grant of summary judgment in favor of the United States regarding the items which were reclassi-

fied as a result of the cost segregation study.

Additionally, both parties have addressed the issue of correcting an internal inconsistency. This Court stated in its previous order that the correction of an internal inconsistency is not a change in the method of accounting, citing to *Lasater v. Scofield,* 52–1 U.S.T.C. 9255 (W.D.Tex. January 29, 1952). *See also Northern States Power Co. v. United States,* 151 F.3d 876, 884 (8th Cir.1998) (holding that a power company corrected an error and did not change its method of accounting when it changed from depreciating to deducting contract losses as it deducted other kinds of contract losses). Nevertheless, this Court ruled that an internal inconsistency was not involved in this case. From HEB's current briefing, the Court is unable to tell whether HEB is claiming it classified other identical items in different stores differently from the items in question here, or whether it reclassified an entire group of items at the same time, when none of those items had previously been classified otherwise. The Court can determine that HEB had classified some items as "site" or "fixtures and equipment," but is unable to determine whether the changes were actually to correct an internal inconsistency (all other examples of item × were classified as "fixtures") or whether it was a global change (HEB decided all examples of item × should now be considered "fixtures")[5]. The cost segregation study included in HEB's materials does not establish that HEB was only correcting an internal inconsistency. Therefore, the Court is unwilling to grant HEB summary judgment on the grounds of internal inconsistency.

### Targeted Jobs Tax Credit

The Targeted Jobs Tax Credit, which is currently in place only in a modified form, provided for tax credits equal to 4% of qualified first-year wages paid to employ-

---

**5.** The examples given of the items that were reclassified were electrical conduits servicing bakery ovens and plumbing servicing refriger-

ation units. See Second Supplemental Declaration of Megan Rooney.

ees who are members of a targeted group. 26 U.S.C. § 51(a). The purpose of this credit was to encourage employers to hire members of typically underemployed groups. For an employee to be considered a member of a targeted group, the employer must have either received certification that the employee is a member of a targeted group from a designated local agency, or have requested, in writing, such certification, on or before the employee's first day of work. 26 U.S.C. § 51(d)(16)(A) (since amended). During 1992, the designated local agency for HEB's certification was the Texas Employment Commission ("TEC").

HEB argues that it is entitled to a $387,720 credit under the Targeted Jobs Tax Credit program for wages paid to 1,727 of its employees in the 1992 fiscal year. These employees had been pre-screened by the Gary Gerstenhaber Company to see whether they fit into one of the targeted groups. HEB had timely submitted Letters of Request to the TEC, but by 1995, when the funding for the certification program was terminated, certification had neither been granted nor denied. HEB did not originally include the amount of the credit on its 1992 return, and its refund claim for that amount was denied.

The United States argues that HEB is not entitled to this credit because the employees were never actually certified as belonging to a targeted group. The United States points to Treasury Regulation 1.51–1(d)(6), which provides that "[a] timely request for certification does not eliminate the need for the employer to receive a certification before claiming the credit." 26 C.F.R. § 1.51–1(d)(6). *See also* 26 C.F.R. § 1.51–1(d)(1) ("the employer must receive a certification before the targeted jobs credit can be claimed").

HEB first argued that the regulation is without effect because it contradicts the Internal Revenue Code. The Court stands by its first ruling that the regulation does not, in fact, contradict the Code provision.

Instead, the regulation adds an additional requirement.

█ In the previous motion, the Court indicated that compliance with the Regulation was not impossible on its face. Although it is true that upon reading the regulation the impossibility of compliance would not be immediately obvious, nevertheless, in HEB's position, where it had timely filed its request, compliance was, in fact, impossible. Treasury Regulations which are impossible to comply with have been held invalid. *See Continental Bank v. United States*, 517 F.Supp. 918 (E.D.Pa. 1981), *aff'd without opinion*, 688 F.2d 819 (3d Cir.1982). With no evidence of culpability on HEB's part, the Court does not want to hold the TEC's inability to decide whether the employees should be certified or not against HEB.

Additionally, HEB points to the ruling in *Perdue Farms, Inc. v. United States*, 1999 WL 550389 (D.Md. June 14, 1999). In *Perdue*, the court refused to allow the government to use the certification requirement to hinder the grant of targeted jobs tax credits. Id. at *3. The *Perdue* court reasoned that the point of the certification program was to help employers and to encourage them to hire members of the targeted groups, not to hinder employers in their efforts. *Id.* at *2. Although the Court is not willing to state that *Perdue* has the kind of preclusive effect on the United States urged by HEB, the reasoning of the court in *Perdue* is persuasive.

█ HEB has presented summary judgment evidence that the employees for whom certification was sought would have qualified for certification. The United States counters that some of the employees might not have been certified, stating that, for example, some of the employees might have been lying. To the extent that HEB can prove at trial that the employees were eligible for the credit, it is entitled to receive it.

## Expert Witnesses

HEB has also filed a motion to designate an additional expert witness, James E. Conner, to testify concerning the Mexico expansion issue. This motion was filed November 26, 1999, well after the scheduling order deadline for designating expert witnesses. Additionally, the need for experts on the Mexico expansion issue will not be affected in any way by the Court's decision on HEB's motion to reconsider. Therefore, this motion will be denied.

The United States has indicated that it does not oppose the addition of other witnesses, except that it indicates that John Allen is unnecessary. In light of this order, the Court will allow HEB to supplement its witness list and add its witnesses except James E. Conner.

## Conclusion

ACCORDINGLY, it is ORDERED that Plaintiff's Motion for Reconsideration (Docket No. 66) is GRANTED IN PART, such that partial summary judgment is GRANTED for HEB on the issue of the additional depreciation deductions caused by data errors in the amount of $132,092 in 1991 and $107,619 in 1992, and the grant of partial summary judgment in favor of the United States on the issue of the targeted jobs tax credit is withdrawn, leaving HEB's claim for such credits remaining for trial, and DENIED IN PART such that the Court declines to alter its previous grant of partial summary judgment in the United States' favor on the remaining additional depreciation deductions, and that Plaintiff's Motion to Amend Complaint (Docket No. 65) is GRANTED, and Plaintiff's Motion for Leave to Supplement Witness List (Docket No. 67) is DENIED as to expert witness and GRANTED as to all other witnesses.