# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1532

_____

Roger O'Shaughnessy, as Tax Matters    *
Person for Cardinal IG Company,    *
   *
        Appellee,    *
   *
     v.    *
   *
Commissioner of Internal Revenue,    *
   *
        Appellant.    *

_____

No. 02-1603

_____

Appeals from the United States
District Court for the
District of Minnesota.

Roger O'Shaughnessy, as Tax Matters    *
Person for Cardinal IG Company,    *
   *
        Appellant,    *
   *
     v.    *
   *
Commissioner of Internal Revenue,    *
   *
        Appellee.    *

_____

Submitted: February 14, 2003

Filed: June 13, 2003

_____

Before WOLLMAN, HEANEY, and MELLOY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Roger O'Shaughnessy, as tax matters person for Cardinal IG Company (Cardinal), a subchapter S corporation, initiated this action against the Internal Revenue Service (IRS) under 26 U.S.C. § 6226, contesting the IRS's readjustments of partnership items filed by Cardinal during tax years 1994 and 1995. The IRS appeals the district court's grant of partial summary judgment that Cardinal was entitled to depreciate under the provisions of 26 U.S.C. §§ 167, 168 molten tin used to manufacture flat glass. Cardinal cross-appeals the district court's grant of partial summary judgment in favor of the IRS on the issue of whether the IRS's reallocation of certain of Cardinal's assets from one defined asset grouping to another constituted a change in Cardinal's method of depreciation accounting under 26 U.S.C. § 446(e). We affirm in part and reverse in part.

## I. Background

Cardinal has manufactured flat glass at its plant in Menomonie, Wisconsin, since its purchase from AFG Industries, Incorporated (AFG) in 1992. Cardinal manufactures glass using the "float" process, in which limestone, sand, soda ash, and other materials are melted to yield liquid glass, which then is "floated" across the surface of molten tin in a structure referred to as a "tin bath." There must be a predetermined volume of molten tin in the bath for the system to operate. In the bath, the liquid glass forms a continuous sheet or ribbon. This ribbon then flows out of the tin bath, entering an "annealing lehr," in which it cools and hardens into glass. Once cooled, the glass is cut and shipped elsewhere for processing and assembly into insulated glass units, which Cardinal sells to window manufacturers.

While the liquid glass is in the tin bath, the molten tin reacts with oxygen, sulfur, iron, and other elements and compounds in the glass to yield tin oxide and tin sulfide. These by-products are impurities referred to as "dross" and must be removed periodically from the tin bath to prevent damage to or clouding of the glass. The presence of impurities in the tin bath accelerates the degradation of the tin: "specifically, sulfur impurities cause vaporization of tin that is eventually exhausted from the tin bath during blow-down of condensed compounds of tin[;] oxygen impurities cause diffusion of tin into the glass that is transported out of the tin bath by the moving ribbon of float glass." The volume of tin in the bath is reduced by these reactions, by general evaporation, as well as by the removal of the dross from the bath. When Cardinal began operations at the Menomonie plant in 1992, it placed approximately 168 tons of tin into the bath. Cardinal estimates that, to maintain the necessary volume of tin therein, it added approximately sixty-two tons, or between one and one and one-half tons per month, of new molten tin into the bath between 1992 and the filing of this case in 1997.

Cardinal treated the initial volume of 168 tons of tin as a depreciable capital asset with a basis of $1,720,808.00 on its federal income tax returns filed from 1992 to 1995. Pursuant to § 168, Cardinal has used the modified accelerated cost recovery system (MACRS) to depreciate tangible assets, including the initial installation of tin. On its 1994 and 1995 tax returns Cardinal also deducted as repair and maintenance expenses under 26 U.S.C. § 162 the costs of tin added to the bath to maintain the necessary volume. The IRS determined that Cardinal should not have depreciated the 168 tons of tin initially placed in the bath because under Revenue Ruling 74-491, molten tin, as used in glass manufacturing, is not a depreciable asset. The district court granted summary judgment in favor of Cardinal on this issue, allowing the depreciation deductions.

Prior to Cardinal's purchase of the Menomonie, Wisconsin, manufacturing plant from AFG, AFG hired the accounting firm of Deloitte & Touche to perform a

cost segregation study allocating the purchase price among plant assets in accordance with the MACRS method of depreciation accounting. Cardinal used the asset groups assigned by Deloitte & Touche to compute MACRS depreciation expenses on its income tax returns from 1992 through 1995.[1] The IRS disputed Cardinal's asset allocation on its 1994 and 1995 federal income tax returns and reallocated those assets from one asset group to another accordingly.[2] The IRS characterized the asset reallocation as a change of Cardinal's method of accounting, which requires Cardinal to submit an accounting adjustment under § 481. Cardinal does not dispute the asset reallocation, but challenges the district court's determination that the reallocation constituted a change in Cardinal's method of accounting under § 446(e).

## II. Standard of Review

We review the district court's grant of summary judgment de novo. Brassard v. United States, 183 F.3d 909, 910 (8th Cir. 1999) (citation omitted). A grant of

---

[1]

| 1245 property | 5-year | $   313,726.00 |
| 1245 property | 7-year | 53,680,135.00 |
| 1250 property | 15-year | 3,167,218.00 |
| 1250 property | 31.5-year | 5,213,921.00 |
| | startup costs | 3,703,790.00 |
| | supplies | 846,210.00 |
| | | $66,925,000.00 |

[2]

| | | Agreed / Unagreed |
| --- | --- | --- |
| 1245 property | 5-year | $   225,000.00 |
| 1245 property | 7-year | 50,247,782.00 / 1,720,808.00 |
| 1250 property | 15-year | 2,343,911.00 |
| 1250 property | 31.5-year | 7,837,499.00 |

summary judgment is appropriate when there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. Id.; see Fed. R. Civ. P. 56(c). Because the parties do not dispute the material facts, we address, as a matter of law, whether Cardinal was entitled to depreciate molten tin used to manufacture flat glass under 26 U.S.C. §§ 167 and 168, and whether the IRS's reallocation of certain of Cardinal's assets from one defined asset grouping to another constituted a change in Cardinal's method of depreciation accounting under 26 U.S.C. § 446(e).

III. Appeal: Depreciation

A. Depreciability of Molten Tin

The IRS contends that Cardinal cannot claim a depreciation deduction for the cost of 168 tons of tin initially installed in the tin bath because the tin is not subject to exhaustion or wear and tear within the meaning of 26 U.S.C. § 167(a) and therefore does not constitute property for which a depreciation deduction may be taken. See 26 U.S.C. § 168 (providing applicable depreciation method for depreciation deduction authorized by § 167). The IRS argues that because the tin is consumed during the manufacturing process, its cost may be deducted instead under 27 U.S.C. § 162, as an expense of operation.

Section 167(a) of the Internal Revenue Code authorizes a depreciation deduction of a "reasonable allowance for the exhaustion, wear and tear . . . of property used in the trade or business . . . ." 26 U.S.C. § 167(a); Treas. Reg. § 1.167(a)-2. Unlike § 162, which provides a deduction for expenses that are "ordinary and necessary" and are "paid or incurred during the taxable year in carrying on any trade or business," the depreciation deduction authorized by § 167 encompasses only capital expenditures or assets, which are amortized and depreciated over time. INDOPCO, Inc. v. Comm'r, 503 U.S. 79, 83-84 (1992).

> [I]f a taxpayer can prove with reasonable accuracy that an asset used in the trade or business or held for the production of income has a value that wastes over an ascertainable period of time, that asset is depreciable under § 167. . . . "Whether or not . . . a tangible asset, is depreciable for Federal income tax purposes depends upon the determination that the asset is actually exhausting, and that such exhaustion is susceptible of measurement."

Newark Morning Ledger Co. v. United States, 507 U.S. 546, 566 (1993) (citing Rev. Rul. 68-483, 1968-2 Cum.Bull.91-92). Cardinal, therefore, must show only that the tin "was subject to exhaustion and wear and tear." Liddle v. Comm'r, 65 F.3d 329, 335 (3d Cir. 1995); Simon v. Comm'r, 68 F.3d 41, 46 (2d Cir. 1995) (holding that, for the purposes of § 168, "'property subject to the allowance for depreciation' means property that is subject to exhaustion, wear and tear, or obsolescence"). As the district court noted, the burden of demonstrating that an asset is depreciable is undemanding: "even imperceptible physical changes in or impact[s] upon the particular item of property during its usage [are] sufficient to qualify the property in question as depreciable." O'Shaughnessy v. Comm'r, 2001 U.S. Dist. LEXIS 22738 at * 15 (D. Minn. 2001) (citing, generally, Simon, 68 F.3d 41; Liddle, 65 F.3d 329); see also INDOPCO, 503 U.S. at 84 (stating a presumption in favor of capitalization: "The notion that deductions are exceptions to the norm of capitalization finds support in various aspects of the Code.").

As indicated above, Cardinal initially installed 168 tons of tin in the tin bath in 1992. The quality and quantity of tin installed in the bath were diminished during the manufacturing process by evaporation and other chemical reactions, specifically the formation of tin oxide and tin sulfide. Accordingly, Cardinal added tin to the bath to maintain the volume required to keep the float glass manufacturing system functioning— approximately sixty-two tons during its first seven years of operation. The tin installed initially in the bath declined in volume and purity as a result of its

use in the glass manufacturing process, undergoing "exhaustion, wear and tear" within the meaning of § 167. Because the tin as installed initially qualified as depreciable capital property, and because the property was placed in service after December 31, 1986, Cardinal appropriately depreciated the tin by claiming a MACRS deduction under § 168: "property of a character subject to the allowance for depreciation" under § 167. 26 U.S.C. § 168(c)(1); Kurzet v. Comm'r, 222 F.3d 830, 843 (10th Cir. 2000) (citing Hosp. Corp. of Am. v. Comm'r, 109 T.C. 21, 42, 1997 WL 412127 (1997)).

B. Deference Due Revenue Rulings

The IRS contends that the district court's holding that molten tin may be depreciated directly contradicts revenue ruling 75-491, upon which the IRS's arguments in opposition to the depreciation deduction primarily are based. Revenue ruling 75-491 advised that the initial installation of tin used in the float process manufacture of flat glass is not "depreciable property qualifying as 'section 38 property' for investment credit purposes." Rev. Rul. 75-491, 1975-2 C.B. 19. The IRS asserts that because the ruling reasonably interprets 26 U.S.C. §§ 162 and 167 and the regulations promulgated to implement those sections with respect to the issue of molten tin, the ruling should be accorded deference under United States v. Mead Corp., 533 U.S. 218, 22 (2001).

The Supreme Court held in Mead that although a "tariff classification ruling by the United States Customs Service . . . has no claim to judicial deference under Chevron [U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)], there being no indication that Congress intended such a ruling to carry the force of law[,]. . . . under Skidmore v. Swift & Co., 323 U.S. 134 (1944), the ruling is eligible to claim respect according to its persuasiveness." Mead, 533 U.S. at 221. The IRS reads Mead as instructing that revenue rulings are due deference

commensurate with "the degree of the agency's care, its consistency, formality, and relative expertness . . . ." Mead, 533 U.S. at 228.

The Supreme Court has refrained from deciding whether revenue rulings are entitled to deference. In United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 220 (2001), the Court stated, "We need not decide whether the Revenue Rulings themselves are entitled to deference. In this case, [which addresses the year to which back-pay awards should be attributed for tax purposes,] the Rulings simply reflect the agency's longstanding interpretation of its own regulations. Because that interpretation is reasonable, it attracts substantial judicial deference." 532 U.S. at 220 (citing Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)).

The Court accorded deference to the IRS's revenue rulings in Cleveland Indians largely because the rulings reflected the "agency's steady interpretation of its own 61-year-old regulation implementing a 62-year-old statute. 'Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law.'" Id. (quoting Cottage Sav. Ass'n. v. Comm'r, 499 U.S. 554, 561 (1991) (citation omitted)). Revenue ruling 75-491, at issue here, does not reflect a similarly longstanding or consistent interpretation of an "unamended or substantially reenacted statute." As the district court explained, the revenue ruling, which analyzed whether molten tin qualified as depreciable property, predates the "'substantial restructuring' of the depreciation rules" effected by the adoption of the Accelerated Cost Recovery System (ACRS) (1981) and the Modified Accelerated Cost Recovery System (MACRS) (1986). See Liddle, 65 F.3d at 332-33, n.3 ("[Under ACRS,] the entire cost or other basis of eligible property is recovered[,] eliminating the salvage value limitation of prior depreciation law.") (quoting General Explanation of the Economic Recovery Tax Act of 1981 at 1450); see also Kurzet, 222 F.3d at 842-43.

The statutory framework on which the agency's analysis in revenue ruling 75-491 was based has changed significantly. Additionally, revenue ruling 75-491, unlike that at issue in Cleveland Indians, until now has not been tested in the courts or otherwise reconsidered by the IRS. See Cleveland Indians, 532 U.S. at 220; see also Davis v. United States, 495 U.S. 472, 482-84 (1990) (giving weight to the IRS's interpretation of "for the use of" where it had been in "long use" as was confirmed by several revenue rulings and judicial decisions). Accordingly, we conclude that the district court did not err in declining to treat revenue ruling 75-491 as controlling or persuasive authority. See Keller v. Comm'r, 725 F.2d 1173, 1182 (8th Cir. 1984) ("[W]hile they are entitled to some evidentiary weight, the Commissioner's private letter rulings and Revenue Rulings are not controlling authority and do not persuade this court in the present case.") (citation omitted); Oetting v. United States, 712 F.2d 358, 362 (8th Cir. 1983); see also True Oil Co. v. Comm'r, 170 F.3d 1294, 1304 (10th Cir. 1999).

## IV. Cross-Appeal: Change in Accounting Method

On cross-appeal, Cardinal contends that the district court erred in holding that the IRS's reallocation of certain of Cardinal's plant assets from one asset category to another for the purposes of MACRS depreciation, see 26 U.S.C. § 168, constituted a change in accounting method under § 446(e). 26 U.S.C. § 446(e); 26 C.F.R. § 1.446-1(e). Cardinal argues that the reclassification of certain plant assets did not constitute a change in accounting method under § 446(e), thereby requiring a § 481(a) adjustment. Instead, Cardinal asserts that the IRS merely corrected the assets' classifications by reassigning assets within the asset-groupings and cost recovery periods that Cardinal consistently had used under the MACRS method of depreciation. See notes 1, 2 supra. By shifting assets, Cardinal argues, the IRS did not change Cardinal's accounting method but rendered the asset categorization internally consistent within Cardinal's existing accounting method. See H. E. Butt Grocery Co. v. United States, 108 F. Supp. 2d 709, 714 (W.D. Tex. 2000) (stating

"the correction of an internal inconsistency is not a change in the method of accounting") (citing Lasater v. Scofield, 52-1 U.S. Tax Cas. (CCH) 9255 (W.D. Tex. Jan. 29, 1952); N. States Power Co. v. United States, 151 F.3d 876, 884 (8th Cir. 1998) (holding that a power company effectively had committed a posting error and did not change its method of accounting when it filed a refund claim seeking to deduct contract losses as it consistently had other losses)). Cardinal also contends that the reclassification of assets did not change a "material item."

Title 26 U.S.C. § 446(e) requires that a taxpayer obtain the Secretary's consent to "change 'the method of accounting on the basis of which he regularly computes his income in keeping his books . . .'" N. States Power Co., 151 F.3d at 883 (citing Treas. Reg. § 1.446-1(a)(1)); 26 U.S.C. § 446(e)). Method of accounting is defined by the applicable regulations by reference: "[a] taxpayer changes his or her method of accounting when he or she changes either the 'overrall plan of accounting for gross income or deductions or . . . the treatment of any material item used in such overall plan.'" Id. (citing 26 C.F.R. § 1.446-1(a)(1), (e)(2)(ii)(a)). The regulations define a material item as "any item which involves the proper time for the inclusion of the item in income or the taking of a deduction." Id.; see also 26 C.F.R. § 1.446-1(e)(2)(ii)(b) (enumerating types of adjustments that are not to be characterized as changes in accounting method).

The dispositive issue before us is whether a change in asset categorization that changes the recovery period under MACRS constitutes a change in Cardinal's method of accounting. The regulations implementing § 446 explicitly exclude certain types of adjustments from being characterized as changes in accounting method. 26 C.F.R. § 1.446-1(e)(2)(ii)(b).

> A change in method of accounting does not include
> correction of mathematical or posting errors, or errors in
> the computation of tax liability. Also, [it] does not include

adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction.

. . . .

In addition, a change in the method of accounting does not include . . . an adjustment in the useful life of a depreciable asset.

Id. Notwithstanding the Commissioner's conclusion that the "recovery period for ACRS or MACRS property (depreciable property placed in service after 1980)" cannot be changed, Kurzet v. Comm'r, 222 F.3d at 844 (citing I.R.S. Pub. 538 (1993)), the Court of Appeals for the Fifth Circuit recently determined that if a change in the allocation of assets within MACRS categories falls under the "useful life" exception of the regulations, it cannot "constitute a material alteration for purposes of IRC § 446(e)," Comm'r v. Brookshire Bros. Holding, Inc., 320 F.3d 507, 510 (5th Cir. 2003). See also § 1.446-1(e)(2)(ii)(b). Although "useful life" is no longer the standard by which depreciation deductions are claimed pursuant to § 167, Liddle, 65 F.3d at 333 (citing General Explanation of the Economic Recovery Tax Act of 1981 at 1450), "analogizing the treatment of useful life as an exception pursuant to the never-repealed, pre-MACRS regulation better accords with the overall regulatory scheme of the Tax Code and regulations than would the denial of the exception on the slender reed of that apparent linkage," Brookshire Bros. Holding, 320 F.3d at 511. We agree.

"[T]he applicable regulations were meant to allow taxpayers to make temporal changes in their depreciation schedules without prior consent of the Commissioner." Id. Reallocating an asset into an existing asset category for the purposes of MACRS depreciation more closely resembles a correction of a reporting error or inconsistency than a wholesale change in accounting method. Although an asset reallocation, such as that which occurred in this case, may change the "timing" of the asset's depreciation, we conclude that the reallocation falls within the regulation's explicit

exemption for "an adjustment in the useful life of a depreciable asset" and thus does not constitute a change in accounting method within the meaning of § 446(e). Accordingly, we conclude that the district court erred by granting summary judgment in favor of the IRS on this issue.

The judgment of the district court is affirmed in part and reversed in part. The case is remanded to the district court for the entry of judgment consistent with the views set forth in this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.