# United States Court of Appeals for the Federal Circuit

---

MANOR CARE, INC. (FORMERLY KNOWN AS HCR MANOR CARE, INC.),
HCR MANOR CARE, INC., AND MANOR CARE OF AMERICA, INC.,
*Plaintiffs-Appellants,*

v.

UNITED STATES,
*Defendant-Appellee.*

---

2010-5038

---

Appeal from the United States Court of Federal Claims in case no. 07-CV-776, Judge Lawrence M. Baskir.

---

Decided: January 21, 2011

---

GREGORY C. GARRE, Latham & Watkins LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were GERALD A. KAFKA, RITA A. CAVANAGH, PAUL B. HYNES, JR. and DEREK D. SMITH.

RICHARD FARBER, Attorney, Appellate Section, Tax Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief

were JOHN A. DICICCO, Acting Assistant Attorney General, and BETHANY B. HAUSER, Attorney.

DAVID W. BUNNING, Greenberg Traurig LLP, of New York, New York, for Amicus Curiae. With him on the brief were MARK E. SOLOMONS and LAURA METCOFF KLAUS, of Washington, DC.

---

Before RADER, *Chief Judge*, DYK and PROST, *Circuit Judges.*

DYK, *Circuit Judge.*

Manor Care, Inc., HCR Manor Care, Inc., and Manor Care of America, Inc. (collectively "Manor Care" or "taxpayers") are operators of nursing homes. They brought suit in the United States Court of Federal Claims ("Claims Court") under the Tucker Act, 28 U.S.C. § 1491(a)(1), claiming an income tax refund. Taxpayers allege that the Commissioner of the Internal Revenue Service ("IRS") improperly refused tax credits under the "work opportunity" ("WOTC") and "welfare-to-work" ("WtW") tax credit programs, which were designed to encourage the hiring of employees from certain disadvantaged groups. I.R.C. §§ 51, 51A (1998). The Claims Court granted summary judgment in favor of the government. *Manor Care, Inc. v. United States*, 89 Fed. Cl. 618 (2009). We hold that taxpayers failed to meet the certification requirements necessary for tax credit eligibility. Accordingly, we affirm.

## BACKGROUND

In 1996 and 1997, Congress enacted the WOTC and WtW tax credit to provide employers an incentive to hire

individuals from certain disadvantaged groups.[1]  *See* I.R.C. §§ 51(d), 51A(c).

As amended, the WOTC provides a tax credit to the employer equal to a percentage of first-year wages paid to "members of a targeted group."  I.R.C. § 51(d)(1); *see* Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1201, 110 Stat. 1755, 1768–1772.  Section 51(d)(1) identifies eight targeted groups for whom employers can claim tax credits: qualified Title IV-A recipients (temporary assistance to needy families), qualified veterans, qualified ex-felons, high-risk youth, vocational rehabilitation referrals, qualified summer youth employees, qualified food stamp recipients, and qualified SSI recipients.  § 51(d)(1).  Subsections 51(d)(2)–(9) detail the substantive requirements for each targeted group.  For example, to be a "qualified veteran," the individual must be a veteran "certified by the designated local agency as being a member of a family receiving food stamp assistance . . . for at least a 3-month period ending during the 12-month period ending on the hiring date."  § 51(d)(3)(A). To be "certified by the designated local agency," an employer must provide proof that an employee satisfies the substantive requirements of a targeted group.

The WtW credit provides a tax credit equal to a percentage of first and second-year wages paid to "individuals who are long-term family assistance recipients." I.R.C. § 51A(b)(1); *see* Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 801, 111 Stat. 788, 869–871.  A "long-term family assistance recipient" is "any individual who is certified by the designated local agency . . . as being a

---

[1]    References to the Internal Revenue Code ("Code") provisions are to those in effect during 1998–2001, the taxable years at issue.  Since that time, § 51 has been renumbered, and § 51A has been repealed and subsumed under § 51.

member of a family receiving assistance under a IV-A program [(temporary assistance for needy families)]" for a specified minimum period of time. § 51A(c)(1)(A). "Long-term family assistance recipients" are essentially a ninth targeted group.

For both types of tax credit, there are "[s]pecial rules for certification" set forth in § 51(d)(12). These rules require that "[a]n individual shall not be treated as a member of a targeted group unless": (1) the employer receives a certification on or before the day the new hire begins work, § 51(d)(12)(A)(i); or (2) the employer completes a "pre-screening notice" on or before the day the new hire begins work and submits that notice to the designated local agency as part of a written request for certification within twenty-one days after the new hire begins work, § 51(d)(12)(A)(ii).

From 1998 through 2001, Manor Care pre-screened and hired individuals who had indicated under penalty of perjury that they were members of certain targeted groups. Manor Care submitted the pre-screening notices to the designated local agencies as part of a request for certification, as required by § 51(d)(12)(A)(ii). Although the agencies granted many of these requests, approximately 3,000 were denied. Manor Care claims the agencies did not provide adequate explanations for the denials as required by § 51(d)(12)(C), which states that an agency "shall provide . . . a written explanation of the reasons for denial." However, there is no indication that Manor Care sought review of any of these denials before the designated local agencies.

On their initial tax returns, taxpayers did not claim credits with respect to the 3,000 employees denied certification, but, in 2005, they filed amended tax returns seeking a refund, with statutory interest, for an alleged

overpayment of approximately $3.4 million attributable to the credits. When the IRS denied the refund claims, taxpayers filed suit in the Claims Court on November 5, 2007, for Manor Care, Inc.'s 1999, 2000, and 2001 tax years; for HCR Manor Care's short tax year ending September 25, 1998; and for Manor Care of America's tax year ending May 31, 1998.

During summary judgment proceedings, taxpayers primarily contended that the tax credits should have been permitted despite the certification denials because, under the "[s]pecial rules for certification" in § 51(d)(12), submitting the requests for certification alone was sufficient to earn the tax credits. In the alternative, Manor Care argued that, even if certification were required by statute, the government's delay in clarifying certain eligibility requirements caused errors in the certifications and entitled the taxpayers to the tax credits on equitable grounds.

The parties filed cross motions for summary judgment. In October 2009, the Claims Court granted summary judgment for the government and dismissed the complaint. The court held that §§ 51 and 51A expressly require certification for statutory membership in a targeted group, and that simply submitting requests for certification is not enough. *Manor Care*, 89 Fed. Cl. at 622–24. The court determined that the "[s]pecial rules for certification" in § 51(d)(12) were enacted to ensure that employers could not claim credits retroactively for individuals who were already employed, since doing so would have no effect on incentivizing the hiring of new employees from the targeted groups. *Id.* at 625–26. Finally, the court rejected taxpayers' alternative argument, finding that the government's delay in clarifying the eligibility requirements did not entitle the taxpayers to a refund on "equitable" grounds. *Id.* at 627–28. Taxpayers timely

appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(3). We review grants of summary judgment de novo. *Cal. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001).

## DISCUSSION

### I

Manor Care argues that by virtue of the "[s]pecial rules for certification" in § 51(d)(12), the credits in question are earned when a sufficient *request* for certification is submitted—regardless of whether the request is actually granted. Such a reading is inconsistent with the unambiguous language of the statute.

We are, of course, obligated to construe the statutory requirements of the Code by looking to the plain meaning of the literal text. *See USA Choice Internet Servs., LLC v. United States*, 522 F.3d 1332, 1336–37 (Fed. Cir. 2008). Here, the definition of every targeted group requires that the individual be "certified by the designated local agency." For example, a "qualified ex-felon" must be "certified by the designated local agency" as (i) having been convicted of a felony, (ii) having been released from prison within one year of being hired, and (iii) being a member of a low-income family. § 51(d)(4). A "long-term family assistance recipient" is "any individual who is certified by the designated local agency" as being a member of a family that received certain benefits for a certain period of time. § 51A(c)(1). In total, the words "certified by the designated local agency" appear eleven times in §§ 51(d) and 51A(c). Thus, it is clear that Congress intended certification to be an integral—and not an optional—part of the statutory scheme. Where certification is denied, there is no entitlement to a tax credit.

Manor Care, however, argues that the "[s]pecial rules for certification" contained in § 51(d)(12) authorize employers to claim the tax credits without receiving certification. This section provides:

(12) Special rules for certifications.

(A) In general.—An individual *shall not* be treated as a member of a targeted group *unless*—

(i) on or before the day on which such individual *begins work* for the employer, the employer has *received* a certification from a designated local agency that such individual is a member of a targeted group, *or*

(ii) (I) *on or before the day the individual is offered employment* with the employer, *a pre-screening notice is completed* by the employer with respect to such individual, and

(II) *not later than the 21st day after the individual begins work* for the employer, *the employer submits such notice*, signed by the employer and the individual under penalties of perjury, to the designated local agency as part of a written *request* for such a certification from such agency.

§ 51(d)(12)(A) (emphases added). Manor Care construes these rules as permitting an employer to claim a tax credit upon *either* "receiv[ing]" *or* "request[ing]" certification, regardless of whether the designated local agency actually grants the request.

However, there is no basis for this construction in the statutory certification section. Section 51(d)(12)(A) does

not provide that "an individual *shall* be treated as a member of a targeted group *if*" the employer timely "receive[s]" or "request[s]" certification. Rather, it provides that an "individual *shall not* be treated as a member of a targeted group *unless*" the employer follows the relevant procedures. § 51(d)(12)(A) (emphases added). Section 51(d)(12)(A) thus makes clear that the requirements of that provision are necessary but not sufficient conditions for claiming the tax credits. Unless at least one of the two certification procedures is followed, an employee may not be treated as a member of a targeted group. *See, e.g.*, *I.N.S. v. Doherty*, 502 U.S. 314, 322–23 (1992) (finding that a regulation couched in negative "shall not . . . unless" terms does not specify positive conditions under which ruling should be granted). Thus, instead of expanding the definitions of the targeted groups, § 51(d)(12) actually imposes procedural limits as to the membership requirements.

The obvious policy goal of § 51(d)(12) is to ensure that the credits are available only when the employer either received or sought certification *before* hiring the employee. *See, e.g.*, *Honeywell, Inc. v. United States*, 973 F.2d 638, 640 (8th Cir. 1992) (denying credits based on retroactive certifications). Allowing employers to retroactively claim tax credits for individuals who are already employed would thwart the statute's purpose because it would not incentivize *new* hires from the targeted groups, as was made clear in the legislative history:

> [T]he Congress was concerned about the extent to which the credit was being claimed for employees with retroactive certifications, i.e., for employees hired before the employer knew such individuals were members of target groups. Clearly, in these cases, the credit was not serving as an incentive for the hiring of target group members. Accord-

ingly, the Act requires that certification that an individual is a member of a target group must be made or requested before the individual begins work.

Staff of J. Comm. on Taxation, 97th Cong., General Explanation of the Economic Recovery Tax Act of 1981, at 171 (Comm. Print 1981).[2]

Thus, § 51(d)(12) was not intended, as Manor Care suggests, to bypass the need for formal certification. Rather, to ensure that tax credits are granted only where they create an incentive to hire new employees, § 51(d)(12) required employers to either receive certification before an employee begins work or request the certification within three weeks of their start date. Thus, there is no merit to the argument that a tax credit is available based merely on a *request* for certification.[3]

---

[2] The original 1981 version of 51(d)(12) did not have the specific time limits of the current version, but the policy behind the provision remains unchanged in the current version. The original version provided that "[a]n individual shall not be treated as a member of a targeted group unless, *before the day . . . such individual begins work*," the employer "has received a certification from a designated local agency that such individual is a member of a targeted group," or "has requested in writing such certification from the designated local agency." Pub. L. No. 97-34, § 261(c)(1)(A), 95 Stat. 172 (1981) (emphasis added).

[3] We note that employers are given notice that the pre-screening in and of itself is insufficient. IRS Form 8850, which contains the pre-screening notice and certification request, includes clear instructions that "[s]ubmitting [a pre-screening notice] is but one step" in qualifying for the WOTC and WtW tax credits. J.A. 259 (last rev. Sept. 1997). The designated local agency still "must certify [that] the job applicant is a member of a

## II

Taxpayers argue, apparently for the first time on appeal, that the statutes compel tax credits for any certifications improperly denied, and a genuine issue of material fact exists as to the extent to which certifications were wrongfully denied to these taxpayers by the state agencies.

Even if taxpayers had properly raised this argument, it is without merit. Nothing in the statute permits a taxpayer to challenge the denial of a state certification in a federal tax proceeding. Under the statute, and in accordance with general administrative law principles, the proper mechanism for challenging an improper certification is an administrative appeal to the state agency, not a collateral challenge in a tax refund proceeding. At the time the certifications were denied, it appears that procedures were already in place to review the denials. The record contains three example certification denials accompanied by letters from the local agencies, each stating the reasons for the denials along with information about submitting additional documentation for reconsideration. Thus, taxpayers could have challenged the denials before the appropriate state agencies. Subsections 51(d)(12)(B) and (C) of the Code make clear that denials of certifications must be challenged before the state agencies by requiring that state agencies denying certification provide a written explanation of the reasons for such a denial.

Because the statute made the availability of the tax credits dependent upon state action, an erroneous state action had to be corrected within the state system in order

---

targeted group or is a long-term family assistance recipient." *Id.*

to secure a tax credit.[4]   Certification errors by state authorities cannot be corrected in federal tax proceedings.

### III

Finally, Manor Care argues that the IRS's failure to provide the agencies timely advice regarding the eligibility requirements for certain targeted groups should excuse its failure to secure certification.  Thus, even if certification were statutorily required, taxpayers argue that equitable principles should bar the government from relying on the certification requirements in denying the tax credits.

The background of this dispute is as follows.  During the period in which the 3,000 requests for certification were denied, the statute required that an employee be "a member of a family" receiving government assistance for the following four targeted groups: qualified IV-A recipients, § 51(d)(2)(A), qualified veterans, § 51(d)(3)(A), qualified food stamp recipients, § 51(d)(8)(A)(ii), and "long-term family assistance recipients," § 51A(c)(1)(A). However, there was confusion as to what it meant to be a "member of a family" receiving government assistance.  In particular, a question arose whether a new employee would qualify if he was a member of a family that had received the requisite benefit for the requisite period, but had not been a member of that family for the entire requisite period.  For example, a child who was listed on a

---

[4]   *See, e.g.*, *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts. . . . [C]ourts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.").

welfare grant at some point during the qualifying period, may not have had coverage the entire period because he moved out of the welfare household. Manor Care contends that the agencies were applying a stricter standard than intended by the statutes by excluding family members who were not listed on the welfare grant for the entire qualifying period.

In 2002 and 2003, three Congressmen involved in drafting the statutes urged the IRS to provide guidance on the family membership issue. In response, the IRS clarified the eligibility requirements in Revenue Ruling 2003-112, 2003-2 C.B. 1007 (Nov. 10, 2003) ("Revenue Ruling"), concluding that an employer was entitled to a tax credit for hiring an individual "if the individual is included on the grant (and thus receives [government] assistance) for some portion of the specified period." The Revenue Ruling acknowledged that some of the certification requests were almost certainly denied improperly under a stricter standard applied by some state agencies.

However, it was not until March 2005 that the Department of Labor finally issued a training and employment guidance letter ("TEGL") directing the state agencies to apply the Revenue Ruling to all certification requests filed on or after the date of the Revenue Ruling. This TEGL stated that a future TEGL would address concerns about requests denied before the Revenue Ruling.

In July 2006, the IRS published a study addressing the impact of the delay in announcing the proper guidelines on certifications before the Revenue Ruling. *See* Announcement 2006-49, 2006-2 C.B. 89 (July 17, 2006). The study found that "less than one percent" of the denials resulted from state agencies "taking a position inconsistent with the [Revenue Ruling]." J.A. 315.

Consequently, the IRS concluded that "no . . . administrative resolution is necessary or appropriate, and no credit will be allowed . . . without proper certification by a designated local agency." *Id.* An employer who believed an employee was improperly denied certification prior to the Revenue Ruling could "request that the . . . agency reconsider that denial." *Id.*

Taxpayers have introduced no evidence that any of the 3,000 allegedly improper denials was the result of inadequate IRS findings. Taxpayers essentially argue that it is unfair that *some* of their certification requests *might* have been improperly denied because the government did not issue a Revenue Ruling (which it was under no obligation to issue) in a timely manner. In support of an equitable remedy, Manor Care relies on two, non-binding district court opinions, *Perdue Farms, Inc. v. United States*, No. CIV. A. Y-97-3571, 1999 WL 550389 (D. Md. June 14, 1999), and *H.E. Butt Grocery Co. v. United States*, 108 F. Supp. 2d 709 (W.D. Tex. 2000), to argue that it is entitled to a tax credit where government inaction unfairly caused certain tax credit programs to be improperly administered.

In *Perdue Farms*, the local agencies failed to process over 2,000 certification requests because the tax credit program had temporarily expired. *Perdue Farms*, 1999 WL 550389, at *1. The government did not dispute that the certifications would have been granted had the requests been reviewed. In granting summary judgment to Perdue Farms, the court concluded that it would have been inequitable to allow the government to rely on the absence of certification to deny the tax credits that were clearly deserved. *Id.* at *2–3.

In *H.E. Butt*, almost 2,000 certification requests were never processed because the local agencies ran out of

funding. 108 F. Supp. 2d at 715. Because the circumstances made it impossible for plaintiffs to comply with the certification requirement, the court fashioned an equitable remedy to allow the taxpayer to proceed to trial, where it could present evidence as to how many, if any, of its employees would have qualified for certification had their requests been reviewed. *Id.*

We think these cases, which do not cite any pertinent case authority, were incorrectly decided. The general rule is that estoppel will not lie against the government because of actions by government agents. *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 426–27 (1990). As a general matter, tax law requires strict adherence to the Code as written. The failure of the tax authorities to give clear guidance as to the meaning of a Code provision does not justify a departure from the strict requirements of the statute or lead to an "equitable" exception. The fact is that the Code is extraordinarily complex, and many provisions are not written with pristine clarity. In other words, they require interpretation. The failure of the IRS to provide clear guidance as to their meaning cannot excuse compliance with the Code requirements. The fact that the guidance here was directed to state agencies in no way suggests a different result.

As the Supreme Court noted in *Lewyt Corp. v. C.I.R.*, 349 U.S. 237, 240 (1955), "general equitable considerations do not control the measure of deductions or tax benefits . . . where the benefit claimed . . . is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole." So, too, our court has reached a similar result. For example, in *Marsh & McLennan Co. v. United States*, 302 F.3d 1369, 1381 (Fed. Cir. 2002), we held that a taxpayer could not recover additional interest on "credit elect overpayments" of federal income tax based on equitable considerations.

The relevant Treasury Regulation stated that such credit elect overpayments did not bear interest under I.R.C. § 6611(a) for the dates asserted by the taxpayer. *See* 26 C.F.R. § 301.6611-1(h)(2)(vii) (2001). The taxpayer in *Marsh & McLennan* nonetheless argued that if it had sought a refund instead of making a credit elect overpayment, it would have had use of those funds. In ruling for the government, we refused to override the language of the statute as interpreted by the Treasury to "achieve what might be perceived to be better tax policy," noting that the "tax code is complex" and "we must be careful to enforce the statute as written and interpreted." *Id.* at 1381 (citations omitted).

If Congress had intended to excuse certification where the IRS had failed to provide clear guidance to the state agencies, it would have said so in the Code or authorized regulatory rules. Absent statutory or regulatory authority, we decline to rewrite the plain language of § 51(d)(12) in order to accommodate supposed equitable principles.

**AFFIRMED**